GEORGE SCHLEE AND MARY FINISON v. THE ESTATE OF
CHARLES H. DARROW, DECEASED.

*Guardian and ward—Liability of surety on bond given on sale of*
*real estate—Jurisdiction of probate court—Validity of*
*sale—Affirmance by ward on attaining majority*
*—Claim against estate of deceased surety.*

1. Where on the trial of an appeal from the disallowance by the pro-
    bate court of a claim against the estate of a deceased surety on
    a guardian's bond, for money received by the guardian on a sale
    of the wards' real estate, the circuit judge found that a proper
    petition for license to make such sale for the support and educa-
    tion of the minors was filed in the probate court,—
        *Held,* that, in the absence of the record of the proceedings had
    in probate court, such finding must govern.

2. Where in such a case it sufficiently appears that the probate court
    had jurisdiction, it must be presumed, in the absence of a con-
    trary showing, that a continuance of the hearing on the guar-
    dian's petition was authorized.

3. While an affidavit of the publication of the notice of a guardian's sale of real estate, purporting to·be made by the book-keeper of the paper in which the notice was published, is not authorized by How. Stat. § 7498, yet this mode of proof is not *exclusive* of any other; and, if such affidavit purports to be made on the *knowledge* of the affiant, it is sufficient evidence of the facts therein stated, under How. Stat. § 6047.

4. A surety on a guardian's bond given on the sale of his ward's real estate is bound to see that his principal sells the land in the manner prescribed by law for the sale of real estate by executors and administrators, and this, by reference, adopts all the provisions of the statute relating to such last-named sales, and covers all the statute requires such officers to do in order to make a *legal* and *valid* sale, including the publishing and posting of notices, and making proper proof thereof. If the license is properly granted, the bond covers all *acts* of the guardian, as well as his *neglects* and *omissions* to make the sale in a legal manner, but not any illegalities or defects occurring *prior* to granting such license.

5. In a suit on a guardian's bond given on the sale of real estate, to recover money received on such sale, neither the guardian nor surety can defeat a recovery by showing that the sale was void for failure to publish or post the statutory notices of sale, or make legal proof of such publication or posting.

6. Where an affidavit of the publication of notice of hearing of a guardian's application for license to sell real estate was made by the book-keeper of the newspaper in which the notice was published, and was received in evidence in a suit involving the validity of such sale, without objection, and no assignment of error is based thereon,—

    *Held*, that a claim that the license was granted without notice of such hearing being given cannot be raised for the first time in the appellate court.

7. Probate courts are not courts of *inferior* jurisdiction, but have *general* jurisdiction in testamentary and other probate matters.

8. Upon the hearing of an application by wards for leave to bring a suit on their guardian's bond given on the sale of their real estate, the probate court (and circuit court on appeal) went into a hearing on the merits involved in the proposed suit, and fixed the amount due the wards on the bond, for the recovery of which sum suit was authorized.

    *Held*, that so much of said judgments as attempts to fix the amount due on the bond is void, and that, on such an application, the probate court cannot pass upon the *merits* of the controversy which may arise upon the prosecution of the bond, or fix

the liability of either the principal or surety.  *Landon v. Comet,*
62 Mich. 80.

9.  Where in such a case the claim filed before the commissioners on
claims against the estate of the deceased surety was for the
amount decreed by the probate court on the hearing of the ap-
plication for leave to bring suit as due on the bond, which claim
sufficiently informed the representative of the estate of the nature
of the alleged default on the bond, and the items making up
such claim, and stated that these items were received by the
guardian on account of such sale, and no bill of particulars being
demanded,—

*Held,* that the claim, *as stated,* was sufficient to admit evidence
of the facts constituting the default complained of, and to deter-
mine the liability of the guardian and surety on said bond, and
the extent thereof.

10.  Where in a suit on a guardian's bond to recover money received
on the sale of real estate the court found that the guardian
received certain moneys as the proceeds of such sale, which he
was licensed to make for the purpose of providing means to *main-
tain* and *educate* his wards, and that he failed to so apply said
moneys, but appropriated the same to his own use,—

*Held,* that this was a breach of the condition of said bond, for
which the surety was liable.

11.  Where a guardian's sale of real estate was *voidable,* at the option
of the wards, who, after attaining their majority, conveyed the
land by warranty deed to the purchaser in affirmance of such
sale, who 'had paid a portion of the purchase price to the
guardian, and secured the balance by mortgage, but had not
received a deed from the guardian, and the consideration paid
for the deed from the wards formed no part of the moneys paid
the guardian,—

*Held,* that such conveyance did not release the surety on the
guardian's bond for the money so paid to the guardian, and which
had not been applied for the benefit of the wards, or accounted
for to them, which liability was a proper claim to file against the
estate of the surety.

Error to Ingham.  (Gridley, J.)  Argued February 3,
1887.  Decided April 14, 1887.

Claimants filed claim for moneys received by guardian on
sale of real estate, against the estate of the surety on guar-
dian's bond.  Judgment of circuit court, allowing claim,
affirmed.  The facts are stated in the opinion.

*L. D. Johnson* and *A. F. Rouse,* for claimants.

*M. D. Chatterton* (*Gibson & Parkinson,* of counsel), for estate.

CHAMPLIN, J. Appellants presented a claim before the commissioners to hear claims against the estate of Charles H. Darrow, deceased, as follows:

"*Estate of Charles H. Darrow, Deceased,*
                    *To George Schlee and Mary Finison, Dr.:*

1883. December 24.  To amount received by Jacob
    Berner, as guardian of George Schlee and Mary
    Schlee, *nee* Finison, on sale of real estate of said
    wards by virtue of a license from the probate court
    for the county of Ingham, and a bond filed in said
    court previous thereto, with said Charles H. Dar-
    row as surety, and adjudged due to said George
    Schlee and Mary Finison from said Berner and
    said surety on said bond, by an order made and
    entered in said probate court on the twenty-fourth
    day of December, 1883, and on appeal to the cir-
    cuit court for said county affirmed by a judg-
    ment made and entered therein on the ninth day
    of March, 1885,   -   -   -   -   -   -   $612 82
1885. November 24.  To interest thereon from De-
    cember 24, 1883, to date,   -   -   -   -   -   82 20
1885. November 3.  To costs taxed on said judg-
    ment on appeal,   -   -   -   -   -   -   68 10
                                            _____
        Total,   -   -   -   -   -   -   -   $763 12"

—Which they disallowed, and claimants appealed to the cir-
cuit court for the county of Ingham, where the matter was
tried before the circuit judge without a jury, who made a
written finding of facts and law, as follows:

"1. That on the ninth day of June, 1870, the said appel-
lants, George Schlee and Mary Finison, were possessed in fee
of lot 3, in block C, in the Fourth ward of the city of Lan-
sing, in said county of Ingham, and were of the age of seven
and ten years, respectively.

"2. That on said ninth day of June, 1870, a proper writ-
ing, purporting to be a petition of one Jacob Berner, bear-
ing date the day and year aforesaid, representing the said
appellants to be of the age of seven and ten years respec-
tively, and said Berner to be next of kin to them, and ask-

ing that he be appointed their general guardian, was filed in the probate court for said county, which said petition was neither signed nor verified.

" 3. That on said ninth day of June, 1870, letters of guardianship of said appellants were issued by said probate court to said Berner, and the general guardian's bond of said Berner, properly approved, was filed in said court.

" 4. The following proceedings were thereafter had in said probate court for the sale of said real estate of said appellants, as appears by the records and files of said court:

" *a*—On the eighth day of September, 1870, the petition of said Berner, as such guardian, setting forth that said appellants were of the age of eight and ten years respectively, and were without means of support, other than said real estate, and that the income from said real estate was insufficient for their support and education, and praying for license to sell the same for that purpose, was filed therein.

" *b*—On the tenth day of September, 1870, an order was made by said court appointing October 31, at one o'clock in the afternoon, for the hearing of said petition.

" *c*—On the twelfth day of November, 1870, a license was issued by said court, and therein said Berner was directed to give notice of such sale by posting notices thereof in three of the most public places in the city of Lansing, and by publication thereof in a newspaper printed in the county of Ingham for six successive weeks next preceding such sale.

" *d*—On same day a bond on sale of real estate, of which the annexed, marked ' Exhibit A,' is a copy, was written upon the records of said court, signed by said Berner, as principal, and said Charles H. Darrow, now deceased, as surety; and under said bond so written upon said records was an approval thereof by the judge of probate of said county, in words and figures as appears by the copy thereof hereto annexed, Exhibit A.

" *e*—On same day the guardian's oath of said Berner, before sale, was filed in said court.

" *f*—On the fourth day of April, 1871, a report of sale, signed by said Berner as such guardian, was filed in said court, setting forth the sale of said real estate, in pursuance and by virtue of said license and bond, to one Fidelia Kinzle, for $650, on the twenty-sixth day of December, 1870, and the giving of notice prior thereto by publication, etc., and by posting in three of the most public places in the ' *City of Lansing*.' Attached to said report is the affidavit of O. A. Jenison, ' book-keeper of the Lansing State Republican,'

showing publication of notice of said sale in said paper for six successive weeks, and that the first publication was on the twenty-fourth day of November, 1870. Also thereunto attached is a statement of said Berner, in writing, signed by him, but not verified, showing the posting of such notice in three public places in the *City of Lansing* six weeks preceding the day of such sale.

"*g*—On said fourth day of April, 1871, an order confirming said sale was made and entered by said court.

"*h*—On the fifth day of April, 1871, an affidavit of O. A. Jenison, as book-keeper of the Lansing State Republican, verified by him on the fourth day of April, 1871, showing publication of said order of hearing of said petition for license to sell said real estate, in said paper, once in each week for six successive weeks, and that the first publication was on the twenty-second day of September, 1870, was filed in said court.

"5. On said twenty-ninth day of December, 1870, said Berner, as such guardian, sold at guardian's sale, pursuant to said license, bond, and notice, the said real estate hereinbefore described, to Fidelia Kinzle, for $650, and on the fourth day of April, 1871, duly executed and acknowledged a deed of conveyance thereof to said Kinzle, and received in payment of said purchase price $150 cash, and a mortgage from said Kinzle on said premises for the balance, payable in five equal annual payments, with interest at seven per cent. per annum. There was no actual delivery of the deed, but it remained in Berner's possession, with the understanding that he should have it recorded with his mortgage, and thereafter deliver it to Kinzle. This he failed to do, and the deed was never recorded or delivered.

"6. Shortly after the execution of said deed, Kinzle went into possession of the premises thereunder, has ever since remained in possession, and has made payments to Berner on said mortgage as follows:

| | |
|---|---|
| April 15, 1872, | $120 |
| April 14, 1873, | 50 |
| January 1, 1877, | 35 |
| April 15, 1877, | 20 |
| September 30, 1879, | 30 |
| October 2, 1879, | 10 |

"7. On the seventeenth day of May, 1881, said Berner was cited to appear, on petition of said Mary Schlee, *nee* Finison, at said probate court, on seventh day of June, 1881, and render an account of his guardianship, and at said time and

place appeared in person, but failed and refused to render any account whatever, and was thereupon removed from such guardianship by an order made and entered by said court.

"8. No support, education, or maintenance was provided by said Berner for said wards and appellants, and no part or portion of the proceeds of said sale of real estate was expended by him on their behalf, or for their benefit, but the whole thereof so received by him was and is appropriated by him to his own use.

"9. Said appellants arrived at their majority, said Mary Finison in May, 1880, said George Schlee in 1882; and on or about May 1, 1883, executed and delivered to said Kinzle their warranty deed of conveyance of said premises for the consideration therein expressed of $400, of which the annexed, marked 'Ex. H,' is a true copy. Said conveyance was made by said appellants on account of the claim of said Kinzle that the title he had obtained by said guardian's deed was questionable, and in consideration of the payments he had made on said purchase price of said premises to Berner, and in reliance on the advice of their attorney that they had a legal claim against Berner and his surety on said bond for the amount of said payments, and as a proper and equitable adjustment of the matter as between them and Kinzle.

"10. On the twenty-fourth day of December, 1883, an order granting the said George Schlee and Mary Finison leave to sue on said bond, of which the annexed, marked 'Exhibit B,' is a copy, was made and entered in said probate court.

"11. On the sixth day of June, 1885, the said order, on the appeal of said Charles H. Darrow, was affirmed by a judicial order of the circuit court for said county, entered *nunc pro tunc*, as of the ninth day of March, 1885, of which the annexed, marked 'Exhibit C,' is a copy.

"12. The said Charles H. Darrow departed this life on the twenty-eighth day of May, 1885, and the claim, of which the annexed, marked 'Exhibit D,' is a copy, together with a certified copy of the judicial order, 'Exhibit C,' and of the bond, 'Exhibit A,' were duly filed with the commissioners on claims against his estate, and a hearing thereupon had.

"13. The full amount found due from said Berner to said appellants in said probate order still remains unpaid.

"Upon the foregoing facts the conclusions of law are as follows:

"1. That the sale so made by said Berner to said Kinzle

was wholly illegal and invalid, and of no force and effect whatever, as against said appellants, and did not divest their title to said land.

"2. That said Berner is nevertheless accountable to said appellants for the money he received from said Kinzle, as proceeds of said guardian's sale, with interest thereon from the time of payment; and that the estate of Charles H. Darrow, who was surety on said bond, is also liable to said appellants on said bond therefor.

"3. The said claim of George Schlee and Mary Finison against said estate, for the sum of $612.82, and the sum of $82.20, together with interest thereon from November 24, 1885, aggregating the sum of seven hundred twenty-one dollars and 17-100, should be, and is hereby, allowed as a valid claim against said estate, and the said estate should pay to said appellants their costs of this appeal to be taxed, and that the final decision and judgment of this court be certified by the clerk of this court to the probate court for the county of Ingham for further proceedings thereon.

"G. T. GRIDLEY,

"Dated June 23, 1886.          Circuit Judge."

Exhibit A, referred to in the foregoing finding of facts, reads as follows:

"STATE OF MICHIGAN, }
    County of Ingham,    } ss.—Probate Court for said County.

"In the Matter of the Estate of Mary Schlee and George Schlee, Minors.

" Know all men by these presents, that we, Jacob Berner, principal, and ————, sureties, of the county of Ingham, within the State of Michigan, are holden and stand firmly bound and obliged unto Horatio Pratt, Esq., judge of probate in and for said county of Ingham, in the full sum of one thousand dollars, to be paid unto the said Horatio Pratt, Esq., judge of probate aforesaid, or to his successors in said office or assigns; to the true payment whereof we do bind ourselves, and each of us, our and each of our heirs, executors, and administrators, jointly and severally, for the whole and in the whole, firmly by these presents.

"Dated the twelfth day of November, 1870, and sealed with our seals.

" The condition of the above obligation is such that whereas, the above-bounden Jacob Berner, in the capacity of guardian of said Mary Schlee and George Schlee, at a session of said probate court holden on the twelfth day of November, 1870,

obtained license to make sale of certain real estate of said minors for the purpose in said license mentioned : now, therefore, if the said Jacob Berner, guardian as aforesaid, shall and will well and truly sell said real estate, in the manner provided by law for the sale of real estate by executors and administrators, and shall account for and dispose of the proceeds of said sale in the manner provided by law, and shall, in all things relative to said sale, govern himself by the law of said State, so that the interest of said minors shall be secured, then the above obligation to be void; otherwise to remain in full force and virtue.

"Signed, sealed, and delivered    JACOB BERNER.    [L. S.]
        in presence of                    C. H. DARROW.     [L. S.]

"*Ingham County—ss.:* At a session of the probate court for said county, holden at the probate office in the village of Mason, this twelfth day of November, in the year of our Lord 1870.

"I have examined the foregoing bond, and approve the same, and order it to be recorded.

"HORATIO PRATT, Judge of Probate."

Exhibit B is an order of the probate court bearing date December 24, 1883, granting leave to claimants to sue the bond (Exhibit A).

Exhibit C is an order of the circuit court for the county of Ingham, reciting that after the trial and submission of the claim Charles H. Darrow had departed this life. It was thereupon ordered that the judgment be entered upon the finding, *nunc pro tunc,* as of the ninth day of March, 1885.

Exhibit D is a copy of the claim filed.

Exhibit H is a copy of a warranty deed from George Schlee and Mary Finison, sole heirs of John George Schlee, deceased, to Fidelia Kinzle, dated April, 1883, and purports to convey, in consideration of $400, lot 3, block C, according to the recorded plat of the city of Lansing. This deed was duly acknowledged on the first day of May, 1883.

It is claimed by counsel for the estate of Darrow that the probate court had no jurisdiction or authority to make the order allowing Jacob Berner, guardian, to sell the real estate of his ward. The foundation of jurisdiction for that pur-

pose is a petition specifying the purpose for which a sale is required. The records of the probate court are not before us, and we must be governed by the findings of fact made by the circuit judge. He finds that a proper petition was filed in the probate court for a sale for the support and education of the wards. It sufficiently appears that the probate court had jurisdiction, and, in the absence of proof to the contrary, it must be presumed that the hearing on the application was properly continued from the thirty-first day of October to the twelfth day of November, 1870.

The next objection is that the order made by the court authorizing the sale was not made in conformity to the statute, and was void. It directed notice of such sale to be given by posting notices thereof in three of the most public places in the city of Lansing, and by publication thereof in a newspaper printed in the county of Ingham, for six successive weeks next preceding such sale. It is claimed that the order should have required the notice to be posted in the Fourth ward of the city, and that the property to be sold was situated in that ward. The report of sale made by the guardian shows that the notices were posted in three of the most public places in the city of Lansing, but does not show that any notices were posted in the Fourth ward. The statute requires the notice to be posted in the ward where the real estate to be sold is situated. How. Stat. § 6040.

The statute (section 7498) provides that proof of the publication may be made by the affidavit of the printer of the newspaper, or of his foreman or principal clerk. The affidavit of publication was made by one O. A. Jenison, who is described as "book-keeper of the Lansing State Republican." This certainly was not a compliance with this statute. But this mode of proof is not exclusive of any other, and, in case of sales made by an executor or administrator of real estate, and which also applies to sales made by guardians, another section of the statute (How. Stat. § 6047) provides that—

" An affidavit of the executor or administrator, or of some other person having knowledge of the fact that notice of any such sale was given as provided in this chapter, being made before the judge of probate, or some other officer authorized to administer oaths, and filed and recorded in the probate court, together with a copy of the notice, shall be admitted as evidence of the time, place, and manner of giving the notice."

The affidavit of Jenison does not purport to be upon information and belief, but is couched in positive affirmative language, and therefore presumably upon knowledge, and is sufficient evidence, under the section last cited, of the facts stated in the affidavit. But objection is also made that the affidavit shows upon its face that the notice was not published six weeks.

The sale occurred on the twenty-sixth day of December, and the affidavit of the book-keeper shows that the first pub-. lication was on the twenty-fourth day of November, 1870, which was less than five weeks before the sale. No other proof of publication was made.

Conceding that the sale was void by reason of the facts stated, can such facts be taken advantage of to defeat an action upon the bond given by the guardian licensed to sell real estate before such sale is made? The statute provides that every guardian licensed to sell real estate, in a case like this under consideration, shall, before the sale, give bond to the judge of probate, with sufficient surety or sureties, to be approved by such judge, with condition to sell the same in the manner prescribed by law for sales of real estate by executors and administrators, and to account for and dispose of the proceeds of the sale in the manner provided by law. Section 6092. Manifestly he cannot. The facts relied on, instead of defeating a recovery on the bond, plainly prove a breach of the condition thereof. The surety is bound that his principal shall sell the real estate in the manner prescribed by law for sales of real estate by executors and administrators, and this, by reference, adopts all the provisions

of the statute relating to such sales by executors and administrators, and covers all the statute requires such officers to do in order to make a legal and valid sale, including the publishing and posting of notices, and making proper proof thereof. If the license is properly granted, the bond covers all acts of the guardian, as well as his neglects and omissions to make the sale in a legal manner, but it does not cover any illegalities or defects occurring prior to the granting of such license.

Counsel for the Darrow estate claims that the license was granted without notice of the hearing on the petition having been given, and consequently the order was void. It appears from the finding of the court that on the fourth day of April, 1871, an order was entered by the probate court confirming the sale; and also on the fifth day of April, 1871, an affidavit was filed, made by O. A. Jenison, as book-keeper of the Lansing State Republican, which was verified by him on the fourth day of April, showing publication of the order of hearing of the petition for license to sell said real estate, and that the first publication was on September 22, 1870, and was published six weeks.

While this affidavit was not evidence of the publication of the order of hearing, had it been timely objected to, yet no objection appears to have been taken to its introduction in evidence, and no assignment of error is based thereon, and it cannot be permitted to be raised in this Court for the first time. It shows a publication for the proper length of time, the only defect being that it was verified by the book-keeper instead of the printer, foreman, or clerk. Had objection been seasonably made on this ground, other proof of publication could have been made. The fact that it was not filed until April 5, 1871, is of no importance; the vital point being that notice was in fact properly given, and it was immaterial when the proof of that fact was produced. Probate courts are not courts of inferior jurisdiction, but have

general jurisdiction in testimentary and other probate matters. *People v. Wayne Circuit Court*, 11 Mich. 393; *Church v. Holcomb*, 45 Id. 29.

This case is brought before us on a bill of exceptions and writ of error. The errors alleged in the bill of exceptions are that the evidence introduced before the circuit court made out a different case from the one made before the commissioners on claims. The claim filed before the commissioners is above set out. It appears to be based upon an order made and entered in the probate court on the twenty-fourth of December, 1883, and affirmed by the circuit court, March 9, 1885. It appears that the claimants in this case applied by petition to the probate court for leave to bring suit upon the bond given by the guardian, above set forth in full, and, upon the hearing of that application, went into a hearing of the merits involved in a suit upon the bond, and it was ordered and decreed that Jacob Berner pay to said Mary Schlee, *nee* Finison, and George Schlee, the sum of $612.82, within 60 days from the date of the order, and that at any time after said 60 days, if said sum of $612.82 and interest thereon was not sooner paid, said Mary Finison and George Schlee were authorized to bring an action in the circuit court upon said bond, in the name of the judge of probate, but for the benefit of said Mary Finison and George Schlee, for the recovery of any and all damages sustained by reason of such failure and neglect of said guardian. From this order Darrow appealed to the circuit court, where, as appears from the record, the cause was tried before the court; and a judgment was entered therein that Jacob Berner pay to the said George Schlee and Mary Finison the sum of $612.82, with interest thereon from the date of said order, and that George Schlee and Mary Finison be, and were thereby, authorized to bring an action in said court on the bond against said Jacob Berner and Charles H. Darrow, in the name of the judge of probate for the county of Ingham, to

recover the same. So much of said judgments of both courts as attempts to fix the amount due from Berner to Schlee and Finison, in an application for leave to sue the bond, is void. Upon such an application, the probate court cannot pass upon the merits of the controversy which may arise upon the prosecution of the bond, or fix the liability of either principal or surety therein. *Fay v. Rogers*, 2 Gray, 175.

We held in *Landon v. Comet*, 62 Mich. 80, that, if the guardian and her sureties should appear and contest the granting of leave to sue the bond, the matter of their legal liability upon such bond could not in such a proceeding be properly adjudicated; and it was said that the order to sue only grants to the party applying the privilege of raising the question of such liability in a court of law.

It was held in *Hancock v. Hubbard*, 19 Pick. 167, that a decree made by a probate court, not within its jurisdiction, is wholly void, and a refusal to comply with such decree by an administrator is not a breach of his bond. It was for the amount so decreed by the probate court, and adjudged by the circuit court in the application for leave to sue, that the claim was filed before the commissioners as a claim against the Darrow estate. But the question is, does the claim, as presented to the commissioners, sufficiently apprise the executor or administrator of the Darrow estate of the nature of the default in the guardian's bond upon which the claim is based? The record in the probate court shows the items which go to make up the amount, and expressly states that those items were received by Jacob Berner on account of the sale of the real estate.

No bill of particulars was demanded, and I think the claim, as stated, sufficient to admit evidence of the facts which constituted the default of the guardian's bond, and to determine the liability, and the extent thereof, of the principal and surety upon the guardian's bond. It does not appear that

the record in the probate court was the only evidence offered before the commissioners, nor does it appear what evidence was offered, and in the circuit court it does appear that evidence was given of the items of cash received upon the sale by the guardian.    Finding No. 6, above.

The exceptions to the rulings upon the introduction of testimony must be overruled.    That the bond given by the guardian upon the sale of real estate for the purpose of maintaining and educating his wards is designed to secure a regular and valid sale, and also to protect the wards against a misapplication of the proceeds, there can be no doubt.    The condition is that the guardian shall sell the land in the manner prescribed by law for sales of real estate by executors and administrators, and to account for and dispose of the proceeds of the sale in the manner provided by law.    And the law provided that the guardian should apply the proceeds of the sale, so far as necessary, to the maintenance and education of his ward, when the land was sold for that purpose, and should put out the residue, if any, on interest, or invest it in the best manner in his power, until the capital shall be wanted for the maintenance and education of his ward.    In this case the court finds that the guardian received certain moneys as the proceeds of the sale made under the license, granted for the purpose of providing means to maintain and educate the wards; and he further finds that—

"No support, education, or maintenance was provided by said Berner for said wards, and no part or portion of the proceeds of said sale of real estate was expended by him on their behalf, or for their benefit, but the whole thereof so received by him was and is appropriated by him to his own use."

This was a breach of the guardian's bond given on the sale, for which he and his surety are liable, unless exonerated by what subsequently transpired.    *Mattoon v. Cowing*, 13 Gray, 387; *Bennett v. Overing*, 16 Id. 267; *McKim v. Morse*, 130 Mass. 439; *Griffin v. Johnson*, 37 Mich. 91.

The circuit judge found, as a conclusion of law, that the sale from Berner to Kinzle was wholly illegal and invalid, and of no force and effect whatever, as against the appellants, and did not divest their title to said land. If this conclusion is correct, it is clear that appellants have no claim against the estate of Darrow, the surety on the bond, for the money paid on such sale. There would in that case be a total failure of consideration, and the money paid on the purchase price would belong to Kinzle, and not to Berner nor to the appellants. But we are disposed to treat the sale, in accordance with the views of appellants' counsel, not as void, but as voidable, at the option of the wards on arriving at majority. Their action, after arriving at the age of 21 years, raises the most difficult question presented in the record. By the ninth finding of fact the court finds that appellants, after arriving at the age of majority, executed and delivered to Fidelia Kinzle their warranty deed of the premises for the consideration therein expressed of $400. The court then goes on to state why the conveyance was made. He says it was—

"On account of the claim of said Kinzle that the title he had obtained by said guardian's deed was questionable, and in consideration of the payments he had made on said purchase price of said premises to Berner, and in reliance on the advice of their attorney that they had a legal claim against Berner and his surety on said bond for the amount of said payments, and as a proper and equitable adjustment of the matter as between them and Kinzle."

The language of this finding, taken by itself, is ambiguous; but, if considered in connection with the balance of the finding, it appears sufficiently certain that the consideration of the deed mentioned constitutes no part of the money paid by Kinzle to Berner. The warranty deed from Schlee and Finison to Kinzle was executed in affirmance of the sale made by the guardian, and the appellants must be held to a ratification of the terms and condition of that sale. They could make

such terms with Kinzle, not prejudicial to the surety on the guardian's bond, as they chose. They were authorized to treat with the purchaser with reference to the unpaid purchase money, and, if they have done so, it does not affect the liability of the surety for the moneys paid to Berner upon the sale or afterwards towards the purchase price. The money paid by Kinzle to Berner on account of the sale is directly within the condition of the bond, and the failure of Berner to account for or pay over the money pursuant to the statute and order of the probate court constitutes a breach of the bond for which the surety was liable. The surety having died before the institution of the suit upon the bond, the liability thereon was a proper claim against his estate, and was rightfully presented for allowance to the commissioners on claims.

The extent of the liability was determined by the findings of the circuit judge, and the judgment is affirmed, and it will be so certified to the probate court. The claimants will recover costs.

The other Justices concurred.