## THE STATE *ex rel.* WEAVER v. WEAVER, *Executrix, et al., Appellants.*

1. **Practice:** GUARDIAN'S BOND : PRIMA FACIE CASE. In an action on the bond of a guardian for its breach in not conducting with fidelity the sale of the ward's land, and in not faithfully accounting for the proceeds of the sale, proof that a sale was made and that its proceeds had been received by the guardian makes a *prima facie* case for the plaintiff.

2. ———: ——— : ———. It then devolves upon the defendants to show that the proceeds had been accounted for.

3. **Sureties :** ESTOPPEL. The sureties on such bond will not be heard to say that the sale by the guardian was a mere fiction, and that the guardian did not receive the proceeds of the sale, and had nothing to account for ; it appearing that the guardian had made a report to the court of a sale in cash, and that the court upon said report made its order approving said sale and divesting the relator of title to his land.

4. **Breach of Bond :** CREDIT. A credit will be allowed the guardian, on the amount for which he is liable by his report of sale, of the sum received by the ward after his majority, upon the sale of lots conveyed to him by the guardian on account of the sale.

*Appeal from Bates Circuit Court.*—HON. JAMES B. GANTT, Judge.

REVERSED.

*Holcomb & Silvers* for appellants.

(1) The evidence submitted by plaintiff shows no breach of the bond, and, therefore, no cause of action against defendants. (2) The relator should be remitted to his action on the bond for the guardian's failure to comply with the order of the court, in failing to make an actual *bona fide* sale. The sale was a bogus one, for his own private ends, and the breach of the bond alleged was not proved. Bigelow on Estoppel [3 Ed.] pp. 96–7; *Pritchard v. Hitchcock*, 6 M. & G. 151; *Drummond v. Prestman*, 12 Wheat. 515; *Bissell v. Saxton*, 66 N. Y. 55; *State v. Rosswaaf*, 3 Mo. App. 11. (3) The grounds of equitable defence set forth in the answer may be pleaded in this case. *State v. Meagher*, 44 Mo. 356. (4) In this case, the guardian acted in good faith, and he can only be held to common prudence, skill, and caution in making the reinvestment. At the time of the Bybee exchange, the Portsmouth property received by guardian, and held in trust for relator, was worth far more than his interest in the Bates county land. *Königmacher v. Kimmel*, 1 P. & W. 207; *Jones' Appeal*, 8 W. & S. 143; *Clark v. Garfield*, 8 Allen, 427. The ground upon which the court made the order of sale was, that the proceeds thereof might be invested in other lands. This we claim he did, indirectly, it is true, in the land trade with Bybee. (5) The guardian should not be chargeable with interest on the proceeds of the sale, as he maintained and educated his ward. And he further appears to have borne all the expenses incident to the guardianship; paid all the costs and attorneys' fees connected with the sale of the land. For all this, he should certainly be reimbursed. *Maupin's Executor v. Dulany's Devisees*, 5 Dana, 589; *Otto v. Becton*, 55 Mo. 99.

*Gantt & Casey* for respondent.

(1) The plaintiff's evidence made out a *prima facie* case. But conceding such not to be the case, defendants by their own evidence supplied the alleged defects. *Kelly v. Railroad,* 75 Mo. 138. (2) The sureties are estopped to make the defence urged in their behalf. The guardian in no way complied with the law, and the breach was complete, whether for the failure to pay $2,160 and interest, as required, or whether the damage came from the failure to make a *bona fide* sale. In either case, the ward has, under the forms of law, been utterly despoiled of his estate. (3) There is no equitable defence. (4) The guardian is chargeable with interest on the money. There is no evidence that he paid any attorneys' fees, and there were no expenses of guardianship, as he scrupulously avoided the probate court; and as there is no evidence as to what the maintenance was worth, and as the father and guardian did not charge for maintenance, the sureties cannot for him.

BRACE, J.—The deceased, Jacob Weaver, was the father and natural guardian of the relator, George W. Weaver. This action was brought on a bond for three thousand dollars, executed by the said Jacob Weaver, as principal, and the said defendants, Felix R. Weaver and William Fisher, as sureties, the condition of which is as follows: " The condition of the above obligation is such that whereas the above bounden Jacob Weaver, as the natural guardian of his son, George W. Weaver, did, at the March term, 1874, of the circuit court of Bates county, Missouri, obtain from said court an order, directing him to sell the land or real estate of the said George W. Weaver, and all his interest in said real estate described in said order; now, if the said Jacob Weaver shall conduct such sale with fidelity to the inter-

ests of his said ward, George W. Weaver, and faithfully account for the proceeds of such sale according to law, and as the order of the court may require, then this obligation to be void, otherwise to remain in full force and effect in law."

It is alleged in the petition that said bond was, on the twenty-eighth day of July, 1874, duly approved by the circuit court of the county of Bates aforesaid, and the following breach of the condition thereof is assigned : " That said Jacob Weaver, as such guardian, sold said land at the July term of said circuit court for the year 1874, for the sum of $2,160, and received said sum of money into his hands as such guardian, but that said Jacob Weaver, as such guardian, failed to faithfully account for the proceeds of such sale according to law, in this that he failed, refused, and neglected to reinvest said sum of money, as required by law, and neither he nor any one for him has ever accounted for or paid over the same."

The defendant, Martha A. Weaver, executrix of said Jacob Weaver, deceased, made default. The defendants, Felix R. Weaver and William Fisher, answered, saying that they had no information sufficient to form a belief as to whether the said Jacob Weaver sold said land for the sum of $2,160, and received said sum of money, as charged in the petition, or not; denied the breach of the bond therein assigned, and, for further answer, alleged, in substance, that the real estate described in the petition as the property of the relator, was purchased, and the consideration therefor paid, by the said Jacob Weaver, deceased, who caused it to be conveyed to his son, the relator, who was a minor about twelve years of age when the last conveyance was made, in January, 1871, residing with his father, and who continued to reside with his father until his majority, July 18, 1880, and until the death of his father, December 28, 1881; that said real estate was sold by the said Jacob

Weaver, guardian of the relator, at public sale, under the order of the circuit court of Bates county, and the said defendant, Felix R. Weaver, became the nominal purchaser thereof, the actual purchaser being one Joseph Bybee, who paid the whole consideration therefor; that, although the deed of the said Jacob Weaver, guardian, as aforesaid, conveying said real estate to said Felix R. Weaver, recites a consideration received by said guardian from said Felix R. Weaver of $2,160, no consideration was, in fact, paid by said Felix R. to said guardian therefor; that the actual consideration for said real estate was paid by said Bybee; that the consideration paid therefor by said Bybee, and for other lands held by said Jacob Weaver, in his own right, and that of his wife, was the conveyance by the said Bybee to the said Jacob Weaver, on the fifth day of May, 1874, of certain lands owned by the said Bybee, among others, a certain lot adjacent to the city of Portsmouth, in the state of Ohio; that the said Felix R. Weaver, on the nineteenth of December, 1874, at the request of the said Jacob, and without any consideration by him received therefor, united with the said Jacob and his wife in a deed of conveyance of said real estate of the relator, so nominally purchased by him at said public sale, conveying said real estate to the said Bybee; that said real estate, so nominally purchased and conveyed by him, was worth $2,160, and said lot adjacent to the city of Portsmouth, was worth four thousand dollars; that afterwards, on the tenth day of June, 1881, the said Jacob Weaver conveyed said lot to the relator in full discharge of his said trust, and by such conveyance fully reimbursed the relator for the value of his lands so sold by the said Jacob at public sale, as aforesaid; that, at the time said lot was conveyed to the relator, it was worth the sum of thirty-two hundred dollars; that, prior to such conveyance, the said Jacob had encumbered said lot with a mortgage, to the amount

of one thousand dollars, and to further reimburse relator the said Jacob afterwards, in his lifetime, gave relator certain personal property, of the value of four hundred and fifty dollars, and by his will bequeathed him certain other personal property.

The plaintiff replied to this answer, denying each and every allegation therein contained. The case was submitted to the court on the pleadings and evidence, without a jury; the court found for the plaintiff, assessed his damages at three thousand dollars, and rendered judgment accordingly, from which defendants, Felix R. Weaver and William Fisher, appeal to this court. The plaintiff, to sustain his cause of action, introduced in evidence the petition of Jacob Weaver, as natural guardian of the relator, to the circuit court of Bates county, presented to said court at its March term, 1874, verified by his affidavit praying for an order for the sale of the real estate of his said ward, in accordance with the provisions of sections 34 and 35, chapter 116, of General Statutes, 1865, page 470; the order of said court, made at said term, authorizing the said guardian to sell said real estate, upon the terms in said order stated, at public sale, first having the same appraised, and entering into bond to the state of Missouri in the sum of three thousand dollars, conditioned that he make such sale with fidelity to the interests of said George W. Weaver, and faithfully account for the proceeds of such sale, and make report of his proceedings in the premises to said court; the bond sued on, given by said Jacob Weaver, as principal, and Felix R. Weaver and William Fisher as his sureties; report of the sale of said real estate, verified by the affidavit of said Jacob Weaver, showing a compliance with the terms of said order, and a sale of said real estate, at public sale, to Felix R. Weaver, he being the highest and best bidder therefor, for the sum of $2,160, and the receipt from him by said Jacob Weaver of the purchase money aforesaid; the

record of said court of the approval of said sale, and order directing said guardian to execute a deed to the purchaser; and the deed of said guardian to said Felix R. Weaver, reciting the order of sale, and proceedings thereunder, the sale, report and approval thereof, and receipt of the purchase money, conveying all the interest of the said George W. Weaver in said real estate to the said Felix R. Weaver, in consideration of the premises and said sum of $2,160.

The plaintiff then rested, in chief, and the said defendants thereupon demurred to the evidence, on the ground that it showed no breach of the bond. The court overruled the demurrer, and this action of the court is assigned for error. The obligation of the defendants was to pay a certain sum of money, to be void upon the condition that the guardian should account for the proceeds of the sale of the ward's real estate; the plaintiff made out a *prima facie* case, when he showed that a sale had been made, and that the proceeds of the ward's real estate had come into the hands of the guardian. It then devolved upon the defendants to show that those proceeds had been accounted for; given, the execution of the bond by the guardian and his sureties, the receipt by the guardian of the proceeds of the sale of his ward's lands, the obligation of the guardian to account for those proceeds became absolute, the liability of defendants on their bond was fixed, and could only be discharged by showing that the guardian had accounted for those proceeds, and, in whatever form presented in the pleadings, this was an affirmative proposition necessary to be asserted and proved by the defendants, in order to discharge them from the obligation of their bond and defeat plaintiff's recovery. There was no error in overruling the demurrer to the evidence.

The defendants then introduced evidence tending to prove some of the many immaterial and redundant allegations of new matter contained in their answer, and,

upon this evidence, they contend that, it having been shown thereby, that F. E. Weaver paid no part of the purchase money, that the sale was made to carry out a land trade previously made by the guardian with Bybee, and that the guardian did not receive any money, in cash, for the lands of his ward, *ergo*, said sale was a mere fiction ; the guardian did not receive the proceeds of said sale, and had nothing to account for, and the ward must be "remitted to his action on the bond for the failure of the guardian to make an actual, *bona fide* sale, instead of a bogus one, for his own private ends"; nevertheless, it must be conceded that the ward's title to the land is gone from him ; that it was worth $2,160 ; that he has been divested of his title thereto by the solemn adjudication of a judicial tribunal, having jurisdiction of the subject-matter, in a proceeding instituted by the guardian against the real estate of his ward, and to which the appellants voluntarily became parties, by the execution of their bond ; and upon the faith of which, and the report of the guardian on oath that it was sold for $2,160, in cash, and the money paid, the court stamped the transaction, as thus recorded, with the seal of absolute verity, by its judgment of approval. Can the defendants be now heard to question that record ? We think not. By signing the bond of the guardian, in this *ex-parte* proceeding, to procure the sale of the ward's land, the defendants voluntarily assumed such a connection with that proceeding that they can no more be permitted to dispute the facts contained in the report of the guardian, which were passed upon, by and on which was based the judgment of the court in that proceeding, which divested the title of the relator to his lands, than would be the guardian who made that report.

We hold the guardian and his sureties bound by the record they made in that proceeding, and that they must account to the relator for the sum of $2,160, pro-

ceeds of the sale of his land, received by the guardian, as per his report, on the thirtieth day of July, 1874. The purchase of the Portsmouth lot was not made by the guardian on his ward's account, the title was not taken in his name; it was not within the jurisdiction of the court that alone could authorize a reinvestment of the funds of his ward. It was purchased before the proceeds of the ward's real estate came to his hands, the title was taken by the guardian in his own name, its purchase was his own individual enterprise, and for *his* personal benefit, and can, in no sense, be considered a reinvestment of the proceeds of the ward's lands, for his benefit, or at *his* risk. All that can be claimed, in equity and good conscience, by defendants, in regard to said lot, is that the conveyance of it, by Jacob Weaver to his son, ought to be considered as a partial payment on account of his indebtedness to the son, on the cause of action sued on. In this light, from the facts and circumstances detailed in the evidence, we think it was regarded by the guardian and his ward, and so it ought to be treated.

The evidence fails to disclose any other payment made by the father, or any sum received by the son, which could be considered as a payment on such account, or any charge that would be proper to be considered in reduction of plaintiff's demand. The Portsmouth lot was deeded to the son in 1881, and was sold by him in 1882 ; the evidence in regard to its value is variant and conflicting ; the relator seems to have diligently sought to obtain the highest price that could be realized for it, and succeeded finally in disposing of it for two thousand dollars, which, from all the facts in the case, was as much as it could have been sold for. Out of this amount the relator paid the incumbrances on the property and legitimate charges for taxes, and expenses in making the sale, all amounting to the sum of $1,128.25 leaving in his hands in the year 1882, say

July 30 (what time in the year the sale was made does not appear), the sum of $871.75, at that date, to represent the only proceeds that ever came to his hands from his guardian, for his real estate sold on the thirtieth of July, 1874, by said guardian as hereinbefore stated, which amount, we think, ought to have been allowed as a credit to defendants, in the assessment of plaintiff's damages in this action, and calculating interest at the rate of six per cent. per annum on $2,160, the amount the ward's land sold for on the thirtieth of July, 1874, from that date to the date of the judgment, November 19, 1884, and interest at the same rate on $871.75, the amount realized by relator from the sale of the Portsmouth lot, from July 30, 1882, to the date of the judgment, and deducting the latter from the former amount, as thus ascertained, we have $2,503.28 remainder, the amount at which plaintiff's damages ought to have been assessed.

For the error of the court in the assessment of the damages, this cause will have to be reversed and remanded, with directions that the circuit court enter judgment in accordance with this opinion.    All concur.

## On motion for rehearing.

BRACE, J.—The motion for rehearing herein is overruled. The order, remanding this cause and directing judgment to be entered in the circuit court, is set aside, and under the power vested in this court, by section 3776, Revised Statutes, 1879, it is ordered that judgment be entered here in favor of respondent, against appellants, for the sum of three thousand dollars, the penalty of the bond sued on, to be satisfied upon the payment of the sum of $2,503.28, with six per cent. interest thereon from the date of the rendition of the judgment in the circuit court, and that execution issue accordingly, and that appellants recover the costs of their appeal and have judgment and execution therefor.    All concur.