[Civ. No. 4809. Third Appellate District.—February 25, 1933.]

EVALYN ALICE SMITH, Respondent, v. FIDELITY AND DEPOSIT COMPANY OF MARYLAND (a Corporation), Appellant.

Butler, Van Dyke, Desmond & Harris for Appellant.

Otis D. Babcock for Respondent.

PLUMMER, J.—The plaintiff in this action had judgment against the Fidelity and Deposit Company of Maryland, a corporation, and Charles A. Smith as administrator

of the estate of Robert T. Swan, deceased, in the sum of $26,094.53, based upon a directed verdict. From this judgment the Fidelity and Deposit Company of Maryland, a corporation, appeals.

The complaint in this action alleges that Robert T. Swan died in the county of Sacramento on or about the sixth day of April, 1931, and at the time of his death was a resident of the county of Sacramento, leaving estate therein; that thereafter, and on or about the seventh day of May, 1931, Charles A. Smith was duly and regularly appointed, and thereupon qualified as the administrator of the estate of Robert T. Swan, deceased; that on or about the eighteenth day of October, 1927, Robert T. Swan was duly and regularly appointed guardian of the person and estate of Evalyn Alice Swan, a minor, thereupon qualified as such, and continued to be the qualified and acting guardian of the estate of said minor until his death; that after his appointment as guardian of the estate and person of Evalyn Alice Swan, a minor, to wit, on the eleventh day of June, 1928, the said Robert T. Swan executed a bond in favor of Evalyn Alice Swan, a minor, according to law, conditioned in the penal sum of $31,000, this bond being executed by Robert T. Swan, as principal, and the Fidelity and Deposit Company of Maryland, a corporation, as surety; that thereafter, said Robert T. Swan, as guardian of the estate of said Evalyn Alice Swan, a minor, returned an inventory and appraisement of the estate of said minor showing the value thereof to be in excess of $33,000; that Robert T. Swan, as guardian of the estate of said minor, did not render a final account or report of his administration of his guardianship, nor administration of the estate of said minor; that as hereinbefore stated, said Robert T. Swan died on the sixth day of April, 1931; that on the twentieth day of May, 1931, said Charles A. Smith, as administrator of the estate of Robert T. Swan, deceased, was directed and ordered by the court having jurisdiction of the estate of said minor, to report a full and correct account of the administration of the estate of said Evalyn Alice Swan, a minor, by the said Robert T. Swan as guardian as aforesaid; that thereafter, and on or about the seventh day of January, 1932, the said Charles A. Smith, as administrator of the estate of Robert T. Swan, deceased, presented and filed an account of the

administration of the estate of Evalyn Alice Swan, a minor, by the said Robert T. Swan, as guardian thereof, and on or about the first day of February, 1932, after due and legal proceedings taken and had therefor, the court having jurisdiction of said accounting, made its order approving and settling the account and report so made and rendered, adjudicating and decreeing that the said Robert T. Swan, as guardian of the estate of Evalyn Alice Swan, a minor, came into control of moneys and properties belonging to the estate of Evalyn Alice Swan, a minor, in the sum of $22,155.35, which sum was wholly unaccounted for by the said Robert T. Swan, as such guardian, and said sum was charged against said guardian, together with interest thereon at the rate of seven per cent per annum, compounded annually until the first day of January, 1932, in the further sum of $3,939.18, and that on the first day of January, 1932, there was due and unpaid from the said Robert T. Swan, as guardian of the estate of said Evalyn Alice Swan, a minor, the sum heretofore mentioned of $26,094.53. In this action judgment was asked against the defendants in that sum.

The answer of the appellant admits the allegations of paragraphs 1, 2, 3, 4, 5 and 6 of the complaint, but denies upon information and belief the entry of the judgment and order of the court settling the account of Robert T. Swan, deceased, as guardian of the estate of Evalyn Alice Swan, a minor, as presented by the administrator of the estate of Robert T. Swan, deceased, and in addition to such denial, pleaded in defense a certain instrument in writing bearing date the twenty-fifth day of October, 1930, entitled ''A release'', signed by the plaintiff in this action, the substantive portion of which is in the following words: ''Now, Therefore, Evalyn Alice Swan, does hereby acknowledge that the principal has faithfully and satisfactorily managed said estate according to law, and fully accounted for, and paid over the assets thereof, and in consideration of the premises and the sum of $1.00, the receipt whereof is hereby acknowledged, does hereby release, acquit, exonerate and forever discharge the surety of and from any and all liability whatsoever under said bond or bonds, and any and all other bonds executed by the surety on behalf of the principal in such fiduciary capacity, and of and from any and all manner of actions, debts, dues and demands whatsoever which could

or might possibly be brought, exhibited or prosecuted against the surety, for, or by reason, or in consequence of its having executed said bond or bonds, or any other bonds as aforesaid.''

Upon the trial of this action the plaintiff introduced testimony to the effect that no money had been paid over to her since the rendering and settling of the account finding an indebtedness in her favor in the sum hereinbefore mentioned. The account as rendered by the administrator of Robert T. Swan, deceased, as and for Robert T. Swan, deceased, as guardian of the estate of Evalyn Alice Swan, a minor, was admitted in evidence. Among the papers and exhibits introduced in evidence was contained the release, the substantive portion of which we have hereinbefore set forth, being a part of the record in an action prosecuted by the plaintiff for the purposes of having the release canceled and set aside, in which judgment was entered in favor of the plaintiff as against the defendants herein, as to which a new trial was granted as to the appellant under the provisions of section 953e of the Code of Civil Procedure. No testimony was introduced on the part of appellant, other than that which fixed the date of the death of Robert T. Swan, deceased, and the relationship of the plaintiff in this action as being the adopted daughter of the said Robert T. Swan, deceased.

No question was made as to the correctness of the account rendered showing the amount of moneys unaccounted for by the guardian of the estate of the plaintiff. No question of fraud or mistake therein was tendered by the pleadings.

Upon this appeal it is contended that the court had no authority to direct a verdict in favor of the plaintiff; that there was no evidence introduced tending to show any indebtedness of the appellant to the plaintiff; that there was no evidence showing the presentation of a claim against the administrator of the estate of Robert T. Swan, deceased, the chief contention being that the appellant has never had its day in court.

Section 1639 of the Code of Civil Procedure, as amended in 1905, formerly provided for the rendering of a deceased's guardian's account, by his administrator. Section 1553 of the Probate Code provides for such procedure as follows: ''The termination of the relation of guardian and ward by

the death of either guardian or ward, or by the ward attaining his majority or being restored to capacity, shall not cause the court to lose jurisdiction of the proceeding for the purpose of settling the accounts of the guardian. The account of the deceased guardian shall be presented by his executor or administrator.''

Section 1606 of the Probate Code, based upon a section of the Code of Civil Procedure providing therefor, now reads as follows: ''When not otherwise specially prescribed in this division, practice and procedure and the making and entry of orders under this subdivision shall be governed by the provisions of division III of this code, so far as they are applicable.''

Section 1400 of the Probate Code based upon previous sections of the Code of Civil Procedure, reads in part as follows: ''The relation of guardian and ward is confidential, and is subject to the provisions of the law relating to trusts.''

Section 554 of the Probate Code reads: ''The liability of principal and sureties upon the bond of an executor, administrator or guardian is in all cases to pay in the kind of money or currency in which the principal is legally liable . . . ,'' etc. The character of the proceeding establishing the account of the deceased guardian in this state is well stated in 11 California Jurisprudence, page 236, as follows: ''Probate proceedings and judgments rendered therein are in the nature of proceedings *in rem*—or at least proceedings *quasi in rem*—whether testate or intestate. In other words, such judgments are founded in proceedings, not against persons as such, but against or upon the thing or subject matter itself, whose status or condition is to be determined, and the judgment, when rendered, is a solemn declaration of the status of the thing, and *ipso facto* renders it what it declared it to be. All the world are parties to probate proceedings and are bound thereby where they have been regularly pursued.''

And in relation to the subject of notice, the following language found on page 244 of the same volume is pertinent here: ''The proceedings in the administration of an estate are *in rem*, and if the notice required by the statute has been given, the decrees of the court therein are binding upon the whole world, other than persons expressly excepted

by statute, whether they have actual knowledge or not, for the whole world is called before the court by the notice. Constructive notice given in the way provided by the statute has always been regarded as sufficient,'' etc.

In 13 California Jurisprudence, page 960, we find the following classification as to guardianship matters, to wit: ''Guardianship proceedings are a part of what are generally denominated 'probate proceedings'. The court acts in such proceedings not as an equitable tribunal in the exercise of general equity powers, but as in a special proceeding and by virtue of power conferred on it by statute. The proceedings must therefore be had in accordance with a procedure outlined by the code.'' And on page 200 of the same volume, the following: ''The notice of proceedings for the settlement of an account by a guardian is the same as that required upon the settlement of accounts of an executor or administrator.'' On page 203 of the same volume the law is further stated as follows: ''The sureties on a guardian's bond are bound by whatever binds the guardian.''

No issue is raised upon this proceeding that proper notices were not given of the date of hearing and settlement of the account of Robert T. Swan, deceased, as guardian of the estate of Evalyn Alice Swan, a minor, as presented by the administrator of the estate of Robert T. Swan, deceased. No appearance, as required by section 1014 of the Code of Civil Procedure, was made by the appellant in this action, although the order settling the final account of the guardian of the estate of Evalyn Alice Swan, a minor, recited that the counsel for the appellant were present in court and participated at and in the hearing of the account.

Prior to the amendment of section 1639 of the Code of Civil Procedure, in 1905, the account of a deceased guardian could only be had by an equitable action. Since the amendment of that section giving the probate court jurisdiction, no such equitable action will lie. As we have shown, and will further show, whatever binds a guardian, binds his sureties. In this particular an action will not lie either against a guardian or his sureties until after an accounting has been had between the guardian and the ward. The probate court has exclusive jurisdiction of such determination, and such determination is a condition precedent to the

maintenance of an action upon the bond. (*Allen* v. *Tiffany,* 53 Cal. 16; *Graff* v. *Mesmer,* 52 Cal. 636.) The holding in these cases has never been modified. (See, also, 28 Cal. Jur. 1304.)

By the great weight of authority the settlement of a guardian's account is held to be conclusive against his sureties, and where such settlement is not held to be conclusive, it is adjudged to be *prima facie* evidence of the facts set forth in the order of settlement. As stated in 28 C. J., page 1294: "In the absence of fraud or mistake, and in the absence of an appeal or a reversal or modification on appeal, a final judicial settlement by a guardian is in most States conclusive on the sureties as to the existence and amount of the guardian's liability to the ward, even where the sureties were not made parties to the proceedings, or notified thereof, or where they did not participate therein. At any rate, a decree rendered on the final accounting is at least *prima facie* evidence against the sureties. A few courts hold generally that it is only *prima facie* and not conclusive evidence, while other courts hold this to be the rule where the sureties were not parties to the suit for accounting. Where notice was given the sureties, they are bound by the adjudication, especially where they appeared at the hearing."

In the case of *Brodrib* v. *Brodrib,* 56 Cal. 563, the question which we are considering was before the court, and it was there held that whatever bound the guardian, bound the sureties, the language of the court there used being: "In the absence of such a suggestion (incompetency of guardian), the court rightfully exercised its jurisdiction over the person of the guardian, and the judgment which it rendered against him was conclusive; for the settlement and allowance of the final account was a matter vested exclusively, by the Constitution and laws, in the court (art. VI, Const. of 1862; sec. 97, Code Civ. Proc.; *Allen* v. *Tiffany,* 53 Cal. 16); and its judgment could not be successfully resisted until reversed or modified by some proceedings directly impeaching it. It was conclusive, not only against the guardian himself, but also against the sureties upon his official bond. Whatever binds and concludes the guardian, equally binds and concludes his sureties." At the time of the rendition of these decisions, the probate

court had and exercised the same power now conferred upon it to compel accountings by the guardians of the estates of minors and incompetents, and as now amended, the probate court has the further power to compel the administrator of a deceased guardian to render such an account. The cases are numerous and need not be further cited to the effect that the settlement of an administrator's or executor's account is binding upon their sureties, and the sections of the code which we have cited show that jurisdiction is acquired in the settlement of guardians' accounts in the same manner. that jurisdiction is acquired in the settlement of accounts of administrators and executors. The notice which is given being in a proceeding *in rem* is binding upon all the world and can be impeached only for fraud or mistake.

Under a somewhat similar section of the Code of Civil Procedure of New York state, empowering the compelling of an administrator of the estate of a deceased guardian to render an account of the guardianship, it is held that the settlement of the account binds the sureties. In *Martin* v. *Porter*, 32 App. Div. 602, 53 N. Y. Supp., quoting from the syllabus, page 186, the decision is as follows: "Under Code of Civil Procedure, §§ 2606–2607, empowering the Surrogate's Court to compel the executor or administrator of a deceased guardian to account to the same extent as decedent if alive, the decree entered on an accounting by the executrix of a general guardian is conclusive against his sureties unless impeached for fraud."

In the case of *Douglas* v. *Ferris*, 138 N. Y. 192 [33 N. E. 1041, 1044, 34 Am. St. Rep. 435], the Court of Appeals of New York, having before it the question of liability of sureties, supported the rule stated in the foregoing cases. We quote from the opinion as follows: "Upon principle and authority there cannot be any doubt that if the guardian had accounted before the Surrogate in the usual way, and a decree had been entered, free from fraud, adjudging that he owed the plaintiff a designated sum, that decree would have bound the sureties. This is upon the principle that by their contract they are privy to the proceedings against their principal, and, when he is concluded, they, in the absence of fraud or collusion, are concluded also. (Citing *Douglass* v. *Howland*, 24 Wend. [N. Y.] 35; *Jackson* v.

*Griswold,* 4 Hill [N. Y.], 522; *Annett* v. *Terry,* 35 N. Y. 256; *Baggott* v. *Boulger,* 2 Duer [N. Y.], 160; *Rockfeller* v. *Donnelly,* 8 Cow. [N. Y.] 637; *Girvin* v. *Hickman,* 21 Hun [N. Y.], 316; *Casoni* v. *Jerome,* 58 N. Y. 315; *Harrison* v. *Clark,* 87 N. Y. 575; *Thayer* v. *Clark,* 48 Barb. [N. Y.] 243.)''

In *Ryan* v. *People,* 165 Ill. 143 [46 N. E. 206], the Supreme Court of Illinois held as follows: ''An order of Probate Court made on presentation of a guardian's final account showing the amount due the ward, is conclusive against the guardian and his sureties in a suit on the bond.''

In *Botkin* v. *Kleinschmidt,* 21 Mont. 1 [52 Pac. 563, 564, 69 Am. St. Rep. 641], in an action involving the liability of sureties upon a guardian's bond, the question was there raised, as here, as to the want of personal notice given to the sureties of the settlement of the guardian's accounts, the contention being that as the sureties were not parties to the account, they were not bound by the decision of the probate court in finding that the guardian was indebted to the ward. The court disposed of such questions as follows: ''It is the undertaking of the surety on a guardian's bond that his principal shall discharge all his official duties; and, since one of the duties of the guardian is to pay the amount found to be due by him to the ward, by a court having jurisdiction for such purpose, it follows that the judgment to that effect must be binding upon the surety, unless obtained by fraud or mistake. Hence, it is held to be a well-settled principle that the sureties in a guardian's bond are *prima facie* bound by a recovery against their principal, although they were not parties to the suit, and that they can relieve themselves only by showing that the amount recovered was in excess of the amount to which plaintiff was entitled, or that he was not entitled to recover at all. (Citing Woerner, Guardianship, p. 149; 2 Brandt, Sur., sec. 580; *Chaquette* v. *Ortet,* 60 Cal. 594; *Biggins* v. *Raisch,* 107 Cal. 210 [40 Pac. 333]; *Brodrib* v. *Brodrib,* 56 Cal. 563; *Deobold* v. *Opperman,* 111 N. Y. 684 [19 N. E. 94].) We think, by the great weight of authority, the sureties in this case are bound by the judgment against their principal, notwithstanding they were not parties to the suit.''

In the case of *Aetna Accident & Liability Co.* v. *Langley,* 68 Okl. 283 [174 Pac. 1046, 1050], we find the following: "There is no charge by the surety that there was fraud or collusion in the settlement of the final account, and although the surety had no notice and did not participate in the settlement, the order is, for the purpose of this action, conclusive upon it also, and not subject to attack by it on the ground stated. (Citing *Greer* v. *McNeal,* 11 Okl. 526 [69 Pac. 893]; *Southern Surety Co.* v. *Burney,* 34 Okl. 55 [126 Pac. 748, 43 L. R. A. [N. S.] 308]; *Title Guaranty & Surety Co.* v. *Slinker,* 35 Okl. 128 [128 Pac. 696]; *Henry* v. *Melton,* 46 Okl. 278 [148 Pac. 730]; *Boudinot* v. *Locust,* 55 Okl. 662 [151 Pac. 579, 155 Pac. 697]; *Cabell* v. *McLeash,* 61 Okl. 224 [160 Pac. 592]; *Southwestern Security Ins. Co.* v. *Richards,* 62 Okl. 122 [162 Pac. 468]; *State ex rel. Weaver* v. *Weaver,* 92 Mo. 673 [4 S. W. 697]; *In re Appeal of Schlee,* 65 Mich. 362 [32 N. W. 717].)"

It is the fact of the indebtedness of the guardian to the estate of the ward that is established by the decree of the probate court, and it is this indebtedness which the surety, by reason of its contract, covenants and agreed to pay. Under the authorities which we have cited, the probate court has full authority to settle the account of guardians and determine the amount of a guardian's indebtedness to the estate of his ward. Whatever that indebtedness may be, the surety, by reason of the bond given to answer for the faithful discharge of his duties by the guardian, is obligated to pay in default of payment by the guardian. Being a proceeding *in rem,* a notice given of the settlement of the guardian's account is notice to all the world. The law is well settled in this state that probate notices are binding upon all parties, save and except where personal notice is required by the codes to be given. The law is well settled also that since the amendment of section 1639 of the Code of Civil Procedure, in 1905, the probate court has exclusive jurisdiction of the accounts of deceased guardians by compelling the administrator of the estate of the deceased guardian to render such an account. (*King* v. *Chase,* 159 Cal. 420 [115 Pac. 207]; *In re Philbrook,* 47 Cal. App. 678 [191 Pac. 77], and cases there cited; *Estate of Randall,* 188 Cal. 329 [205 Pac. 118].) The cases just cited also lay

down the rule that no claim need be filed in behalf of the ward against the estate of the deceased guardian.

The appellant further contends that under the provisions of section 25 of the Civil Code as it read at the time of the execution of the exhibit set forth in the appellant's answer, that the plaintiff was no longer a minor, and is therefore bound by the terms of the alleged release. The section was again amended in 1931, covering the subject of estates. However, we do not deem it important to inquire into the intent of the legislature in making the amendment, or to determine whether the power to execute a release in relation to estates did, or did not exist in a married woman over eighteen, and under twenty-one years of age, prior to the amendment. The record shows in this case that the instrument called a ''release'' was executed a short time after the marriage of the plaintiff; that it was not approved by the probate court having jurisdiction of the estate, and that it was disaffirmed within a year after its execution by the institution of an action to have the instrument annulled and set aside, on the grounds of fraud, undue influence, etc.

As stated in the opinion of the trial court: ''The release was made a few months after the marriage of the ward, and before her guardian's account with her had been settled. Under such circumstances, after the guardian agreed with her and arrived at a settlement, it is inchoate and inconclusive until a year has passed, during which time the ward may dispute the correctness of the account or the settlement she has made with her guardian. . . . It appears that she was the man's ward. . . . It would seem that the agreement came within the terms of the statute, which says that all transactions between a trustee and his beneficiary during the existence of a trust are presumed to be entered into by the latter without sufficient consideration and under undue influence. While in this case the guardianship · (as to the person of the ward) may have terminated with the ward's marriage, the guardian remained the trustee of those funds until a settlement had been effected.''

We agree further with the opinion of the trial court that an instrument executed while the trust relationship existed, placed upon the appellant the burden of showing that it was just and fair. We do not need to cite authorities to the effect that a release obtained by a guardian from his

ward places upon the guardian the burden of proving its genuineness and binding effect, and likewise that it is based upon a true and correct settlement and upon adequate consideration.

█ . The instrument relied upon as a release by the appellant shows no consideration for the execution thereof. It does recite the waiving of paying a further premium, presumably out of the funds of the estate of the ward. But the record shows that those funds had already been dissipated by the guardian, and that the ward was therefore simply giving up all possibility of redress for the wrong committed by her guardian, and allowing the surety to go free without making any adequate compensation.

The original premium recited in the release is the sum of $500. It cannot very well be held that the waiving of the payment of $500 is an adequate consideration for the execution of a release of a party bound for the payment of $26,094.53. In the face of these figures we are unable to perceive that subdivision 19 of section 1963 of the Code of Civil Procedure, in any way supports the contentions of the appellant.

█ There is another ground upon which the action of the trial court may be supported. Paragraph 7 of the plaintiff's complaint sets forth the action of the probate court in settling the account of the guardian, as we have stated, fixing the amount of his liability to the estate of the ward, and the entry of the decree by the probate court, all of which constitutes the public record of the probate court of the county of Sacramento. The answer of the appellant denies the existence of this public record in the following language: "This defendant has no information or belief sufficient to enable it to answer the allegations of paragraph 7 of said complaint, and therefore, basing its denial upon such lack of information and belief, denies generally and specifically each and all of the allegations of paragraph 7 of said complaint." This form of denial has frequently been held insufficient to raise an issue, and constitutes an admission on the part of the appellant as to the facts therein stated, and that the release upon which it relies is shown to have been given without any adequate consideration.

In the case of *Curtin* v. *Salomon*, 80 Cal. App. 470 [251 Pac. 237, 239], this court had before it an answer denying a public record upon information and belief. We there said: "The denials in the answer that the plaintiff and the plaintiff's assignors had not complied with section 2466 of the Civil Code, could not be made upon information and belief. In this case the denial is not even upon information and belief, but simply setting forth that the defendant has not sufficient information upon which to deny the allegations of the complaint, and basing his denial upon the lack thereof, denies, etc. The law is well settled, as stated in *Art Metal Const. Co.* v. *A. F. Anderson Co.*, 182 Cal. 29 [186 Pac. 776], that when the existence of a fact may be ascertained from an inspection of a public record, its existence cannot be put in issue by a denial based solely upon information and belief. (See, also, *Lincoln County Bank* v. *Fetternan*, 170 Cal. 357 [149 Pac. 811] ; *Mulcahy* v. *Buckley*, 100 Cal. 484 [35 Pac. 144] ; *Montgomery* v. *Fidelity & Deposit Co.*, 69 Cal. App. 251 [230 Pac. 993] ; *Yokohama Specie Bank* v. *Trans-Oceanic Co.*, 54 Cal. App. 533 [202 Pac. 346].) "

The cases relied upon by the appellant having all been superseded by the amendment of section 1639 of the Code of Civil Procedure, in 1905, review thereof would serve no useful purpose.

No tenable defense having been presented by the appellant, it is unnecessary to consider the assignment of error as to the admission of the testimony.

A directed verdict was proper, and the judgment is affirmed.

Thompson, J., and Pullen, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 27, 1933, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 25, 1933.