ALEXANDER ANNETT, Administrator, &c., of John Strahan, deceased, Appellant, v. CHARLES M. TERRY, impleaded, &c., Respondent.

The sureties on an administrator's bond, who were not parties to the action against their principal, and had no opportunity for defending against the same, are not concluded by a judgment against their principal; but, in an action against them as sureties, they may set up fraud and collusion on the part of their principal, by which to increase their liability as sureties.

THIS case comes up on appeal from an order of the General Term of the New York Superior Court, reversing a judgment of the Special Term, and ordering a new trial, the appellant stipulating that, if the order be affirmed, judgment absolute shall be rendered against him.

The action is upon the bond of Thomas Kerr, Charles M. Terry and Major Thompson, to the people of this State, conditioned for the faithful execution, by Thomas Kerr, of the duties of administrator of the estate of John Strahan, deceased, and for his obedience of all orders of the surrogate of the county of New York touching the administration of the estate committed to him.

The complaint alleges the revocation of the letters of administration granted to Thomas Kerr, and the appointment of the plaintiff on the 13th of June, 1862; also a decree of the surrogate, on a final accounting by Kerr as administrator, made December 15, 1862, whereby a balance of $1,836.20 was adjudged to be in the hands of Kerr, as administrator of Strahan, and he was ordered to retain his commissions, $165.37; to pay the fees of the surrogate, $54.50; also to pay Matthews & Swan $200, and John P. Crosby $100, for their costs in the proceedings in which they were counsel, and to pay the residue, $1,316.28, to the plaintiff, Annett, as administrator of Strahan.

The complaint alleged, also, the filing of a transcript of this decree in the county clerk's office, an execution to the sheriff, and return thereof unsatisfied. Also an assignment of the said bond, by the surrogate, to the parties to whom

the said decree directed payments to be made, and an assignment by them to the plaintiff; a demand of payment by the same decree was also stated to have been made upon each of the defendants, and a refusal by them.

The defendant Terry, by his answer, set up that he was not a party, and had no notice of the proceedings against Thomas Kerr; that the decree was obtained by collusion between the plaintiff and said Kerr; that the wife of Kerr was one of the children of John Strahan, deceased, and entitled to a distributive share of his estate, which she had received, and her husband, Thomas Kerr, had reduced it to his possession, as he had a right to do, their marriage having been celebrated prior to 1848.

At the trial the plaintiff proved his case substantially as alleged in the complaint. The action was tried before one of the justices of that court and a jury.

It appeared, from the evidence, that Kerr was cited to account, before the surrogate, in behalf of a creditor of the deceased in March, 1859, and again in July of that year, on the petition of one of the heirs, an infant, by his guardian. The defendant Kerr also obtained a citation, before the surrogate, for the creditors and next of kin of the deceased, to attend the final settlement of his accounts, as administrator, in March, 1862. The citation appears to have been served on all the next of kin.

In June, 1862, the plaintiff, Annett, petitioned for a citation, to the defendant Kerr, to appear and account before the surrogate. Annett states, in his petition, his appointment as administrator of the estate of Strahan, and the former appointment of Kerr, and that Kerr has not accounted, although more than eighteen months have elapsed since his appointment. On the first day of July, 1862, the new administrator, Annett, and the late administrator, Kerr, by their counsel, stipulated that the proceedings be brought on for settlement before the surrogate on the 15th of July, 1862. No other proceedings on any of these petitions or citations are introduced in evidence, except the decree of the surrogate, in the last mentioned proceeding, on the petition of the

new administrator, Annett. The decree recites the proceedings, on the petition of Kerr, for a final settlement, and the service of the citation on all persons interested, and the filing of the account of Kerr, as administrator, on the 11th of April, 1862; exception thereto filed by the heirs; the removal of Kerr, as administrator, on the application of his sureties; the appointment of Annett in the place of Kerr, and his petition requiring Kerr to render a final account, as administrator, and the consent of the proctors for the late and new administrator, and the proctor for the infant heir to allow the final account, filed by the late administrator, to stand as his final account; the different adjournments, and the failure of Kerr to attend at the day, and the appearance of the proctors for the different heirs, are also recited, and the surrogate thereupon decrees the said accounts to be finally adjusted and settled as filed. The decree charges Kerr with receipts

| | |
|---|---|
| to the amount of, | $6,551 74 |
| And interest to the amount of, | 196 25 |
| Total, | $6,749 99 |

He is credited with the payment of
debts and expenses to, ............ $3,243 07
And payments to the widow and next
of kin, ........................ 1,668 63
——————— $4,911 70

Balance due, ........................ $1,836 29

This balance Kerr is directed, by the decree, to pay in the manner mentioned in the complaint.

The filing and docketing of a transcript of this decree; the issuing of execution, and the return thereof unsatisfied; the order of the surrogate reciting the directions of the said decree, and directing the assignment of the said bond on which the suit is brought to the said parties to whom payments were directed to be made; and the assignment from Matthews & Swan, Gideon J. Tucker, surrogate, and John P. Crosby, to the plaintiff, Annett, as administrator of Strahan, were all duly and formally proven.

The admission of the decree for the final settlement of the accounts of Kerr was objected to by the counsel for the defendant, Terry, upon the ground that the sureties were not parties, and he also objected to the admission of the assignment from Matthews & Swan, from the surrogate, and from Crosby, to the plaintiff, as administrator, on the ground that the statute gave them no power to assign the bond, and no power to the administrator to take an assignment of these claims for the purpose of bringing a suit against the sureties. The counsel for the said Terry also moved to dismiss the complaint upon the grounds above stated, and also upon the further ground that the suit should have been brought in the name of the people of the State of New York, to whom the bond is made payable, or in the name of those parties to whom the money was decreed to be paid.

The court overruled these objections to the admission of evidence, and denied the motion to dismiss the complaint.

The defense then called Thomas Kerr, who was sworn as a witness, and the counsel then offered to prove that Kerr did not appear on the final accounting or set up any defense; that he suffered the decree to be taken by default; and that this money was stolen from Kerr. Counsel for the defense then asked the witness: " What became of the funds in your hands as administrator ? " Also, " Was this fund stolen from you, or any part of it ? " These questions were objected to by the plaintiff's counsel, and the objection was sustained, and the evidence excluded.

The defendant's counsel also proved, by this witness, that he was married to his wife, who is one of the children of John Strahan, deceased, and entitled to a distributive share of his estate, in 1841. He also asked the witness: " How much did you apply to the maintenance of Mrs. Kerr during the time you were administrator ? " Also this question : " Is Mrs. Kerr entitled to one-fourth of this fund ? "

This evidence was excluded on the plaintiff's objection, and the counsel for the defendant excepted to all the rulings of the court adverse to him.

The judge directed the jury to find their verdict for the plaintiff for the whole amount claimed, to which ruling the defendant also excepted.

*Albert Matthews*, for the appellant.

*William Watson*, for the respondent.

LEONARD, J.   The questions raised by the defense, at the trial, were numerous; but it will not be necessary or profitable to discuss more than one, and that relates to the defense of collusion between the plaintiff and Kerr.

The decree states on its face that it was obtained on the failure of Kerr to attend on the hearing; that it was taken without his appearance; and it follows, of course, that it was taken by default. Kerr was put upon the stand to sustain that defense. He was asked, what became of the fund, and, also, whether any part of it was stolen from him. By stat- ute, an administrator is not chargeable with money or property belonging to the estate which has been lost without any fault on his part. (§ 56 of the article before referred to.)

It appears from the decree that Kerr was credited only with actual payments of money: also, that it was his own statement, under his own application for a settlement, which was adopted as the basis of the decree. If the money had been actually stolen from him, without fault on his part, it was a credit which, in justice to his sureties, Kerr should have demanded. The fact, if proven, tended to show that there had been a collusion or fraudulent recovery submitted to by Kerr. The same remark holds true of the inquiry to the same witness as to the share of the fund to which his wife, a daughter of the intestate, was entitled.

Fraud vitiates a judgment, as well as every contract tainted by it. The sureties had no right to a hearing, before the surrogate, on the question of the amount due from Kerr. None to test its validity upon an appeal. They were stran- gers to the proceeding. It is true that the decree is *prima facie* evidence of the amount due from Kerr; and its recovery, on his admission, arising from his default, binds the sureties in the absence of fraud or collusion.

This principle is fully sustained by English authorities, and also in our own courts. (*Douglass* v. *Howland*, 24 Wend., 55–59.) In the case cited, the authorities are extensively reviewed by Judge COWEN.

The sureties, of whom Terry was one, were strangers to the proceeding in which the decree was pronounced, and are bound by the decree only because the condition of their bond makes them so. They agree that Kerr shall faithfully execute his duty, and obey the orders of the surrogate touching the administration. The decree proves a breach of the bond *prima facie.* The sureties are so far concluded, by its terms, that they cannot impeach it for error or irregularity by an appeal, on their own motion, nor collaterally. Judge COWEN says, in the case just referred to, that "it is plain, from the nature of the agreement (one where sureties stipulate to abide the event of a suit), that the surety means to be concluded, always saving the right, as the law must, in every case where a suit is between third persons, to contest the proceeding on the ground of fraudulent collusion, for the purpose of charging the surety." Numerous cases from the English reports, and from neighboring States, are collected and reviewed by the learned judge.

The defense was insufficiently pleaded, but that objection was not raised by the demurrer to the answer, and cannot be heard at the circuit, or afterward on appeal.

The evidence offered tended to establish the defense of fraud or collusion, and should have been admitted. The appellant should have submitted to the order for a new trial, and met the evidence offered on this subject, but having stipulated for judgment absolute in case the order appealed from should be affirmed, that must be the result, if the court concur in the views I have expressed.

The order appealed from should be affirmed, with costs, and judgment absolute entered for the defendant.

Concurring, DAVIES, Ch. J., WRIGHT, PORTER and MORGAN, JJ.; HUNT, PECKHAM and SMITH, JJ., not voting.

Order affirmed.