William O. Douglass, Respondent, *v.* Peter Ferris et al., Appellants.

Where a guardian, upon the coming of age of his ward, procured a settlement with him, and an extension of time of payment, by means of fraudulent representations, and the ward, upon discovery of the fraud, repudiated the transaction, brought an action to annul it, and to set aside the surrogate's decree, based thereon, discharging the guardian, and recovered a judgment granting the relief sought, *held,* that the liability of the sureties upon the guardian's bond was not affected by the settlement, as the effect of the judgment was to make the whole transaction void *ab initio,* and so there was no binding or valid extension of time of payment; and that said judgment was binding upon the sureties in an action upon the bond.

In the action to set aside the fraudulent settlement, and the surrogate's decree, the court determined and fixed the amount due from the guardian. *Held,* that this was conclusive against the sureties in an action upon the bond; that the ward could not have obtained the relief sought in the Surrogate's Court, and so was obliged to resort to the Supreme Court, and that court having obtained jurisdiction, had power to determine the amount due, and its judgment thereon had the same force and effect as a decree of the surrogate.

Also *held,* that as an omission on the part of the ward to promptly repudiate the transaction, and to tender back what he had received, would have been a defense in the action against his guardian, the judgment therein necessarily determined that there was no want of diligence, and this was conclusive upon the sureties.

*It seems* that as the sureties might have relied to their prejudice, upon the decree of the surrogate, and as an omission to attack it in time was a

defense that may not have been involved in the former action, it was open to the sureties in the action upon their bond.

It was stipulated and found in the action upon the bond, that the defendants, prior to the commencement of the action, were ignorant of the existence of the surrogate's decree. *Held,* that as the sureties could not have acted upon the faith of the decree, or have been misled or lulled into security thereby, they could not have been prejudiced by any delay in seeking to set it aside, and so, such delay was not a defense.

In the action upon the bond plaintiff gave in evidence the bond, the judgment rolls in the action against the guardian, the issuing of executions thereon, and returns thereof unsatisfied. Substantially the only evidence given by the sureties was to show that they had no knowledge of the settlement, or of the fraudulent acts of the guardian until over five years thereafter, and that for two years thereafter the guardian was financially responsible. *Held,* that if the judgment against the guardian was to be discarded as evidence for or against the sureties, except so far as it established the amount due them, no defense was made out; that defendants could not use the judgment as proof of facts in their favor, and at the same time reject the legal result of those facts; that if they claimed the benefit of any part of the record they must take the whole of it.

The answer contained no allegation of *laches* on the part of plaintiff in delaying to prosecute the guardian. *Held,* that defendants could not avail themselves thereof as a defense on appeal here, although the facts upon which it was based appeared by the record.

It appeared that plaintiff discovered the fraud in November, 1880. He immediately notified the guardian thereof, and demanded that the settlement should be rescinded, and offered to restore what he had received under it; the guardian promised to comply with this demand, and pay the claim, and in February, 1882, did pay a portion thereof. The action against him was brought in October, 1882. *Held,* that it could not be affirmed as matter of law that the ward was chargeable with want of diligence, because acting upon the faith of the guardian's promise, he did not previously commence the action against him.

Also *held,* that plaintiff was not chargeable with any omission of duty in not notifying the sureties; that if there was any duty to use active diligence, it was imposed upon the sureties themselves, rather than upon the ward, and the fact that the fraud was committed and repudiated imposed no greater duty of active diligence upon the plaintiff than would have otherwise existed against the sureties.

Mere delay alone upon the part of a ward, after he becomes of age, to proceed against his guardian for an accounting, so long as the ward makes no binding agreement for the extension of time, and does not preclude himself in any way from instituting proper proceedings, in the absence of any request on the part of the sureties on the guardian's bond to proceed, will not discharge the sureties, providing the delay

is not so long that the right to proceed is barred by the Statute of Limitations.

The bond was joint and several. One of the sureties died after the commencement of the action thereon. *Held,* that the estate of the deceased surety was not discharged; and that the action was properly revived against his personal representatives. (Code Civ. Pro. § 454.)

There was no dispute between the guardian and ward as to the amount in the hands of the former belonging to the latter. The bond was conditioned for the faithful performance of his duty by the guardian, and that he would render a just and true account; the judgment charged the sureties with the costs in the action against the guardian. *Held,* error; that while, under the condition of the bond that the guardian will account, the sureties could not be made liable until after a decree or judgment, in the proper court, settling the account, and while the sureties might be made liable for costs included in such decree or judgment, as here the account was not disputed, and the ward assumed to settle without an accounting, and to release his guardian, and authorized a decree to be entered to that effect, and was obliged to bring the action to remove the obstacles so interposed with his consent to an action upon the bond, the costs incurred were not within the condition of the bond.

(Argued March 23, 1893; decided April 25, 1893.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made April 4, 1892, which affirmed a judgment in favor of plaintiff entered upon a decision of the court on trial at Circuit without a jury.

This was an action upon the bond of Edwin B. Low, as guardian of William O. Douglass.

The facts, so far as material, are stated in the opinion.

*Richard L. Hand* for appellants. The plaintiff's settlement with and discharge of Edwin B. Low, in May, 1879, discharged the sureties. (*Paine* v. *Jones,* 76 N. Y. 274; *Calvo* v. *Davies,* 73 id. 211; *Bagley* v. *Clark,* 7 Bosw. 94; *Rathbone* v. *Warren,* 10 Johns. 587; *Shutts* v. *Fingar,* 100 N. Y. 539; *Holme* v. *Brumskill,* L. R. [3 Q. B.] 495; *Boschert* v. *Brown,* 72 Penn. St. 372; *Mix* v. *Vail,* 86 Ill. 40; *Grant* v. *Smith,* 46 N. Y. 93; *Dobbin* v. *Bradley,* 17 Wend. 422; *People* v. *Chalmers,* 60 N. Y. 154; *Figley* v.

*McDonald*, 89 Penn. St. 128; *McMurray* v. *Noyes*, 72 N. Y. 523; *Craig* v. *Parkis*, 40 id. 181; *Hancock* v. *Wilson*, 46 Iowa, 352; *Aaron* v. *Mendell*, 78 Ky. 427; *McNulty* v. *Hurd*, 86 N. Y. 547; Story's Eq. Juris. §§ 324, 325; *Barhydt* v. *Ellis*, 45 N. Y. 107; *Polak* v. *Everett*, L. R. [1 Q. B. D.] 669.) No breach of the condition of the bond is shown. (*J. H.*, etc., *Ins. Co.* v. *Lowenberg*, 120 N. Y. 44; *Overacre* v. *Garrett*, 5 Lans. 156; *Ludlow* v. *Simond*, 2 Caines Cas. 1; *Fellows* v. *Prentiss*, 3 Den. 512; *Bissell* v. *Saxton*, 77 N. Y. 191; *People* v. *Chalmers*, 60 id. 154; *Barnes* v. *Barrow*, 61 id. 39; *Ward* v. *Stahl*, 81 id. 406; *N. B. Assn.* v. *Conkling*, 90 id. 116; *Jennery* v. *Olmstead*, 90 id. 363; *Rochester* v. *Randall*, 105 Mass. 295; *K. Ins. Co.* v. *Clark*, 33 Barb. 196; *Bowe* v. *Wilkins*, 105 N. Y. 323, 328; *Thomas* v. *Hubbell*, 15 id. 405; *Conner* v. *Reeves*, 103 id. 527; *Clark* v. *Montgomery*, 23 Barb. 464; *Douglass* v. *Howland*, 24 Wend. 35; *Kane* v. *Cortesy*, 100 N. Y. 132, 139; Code Civ. Pro. § 2830.) There was no assignment of the bond or leave of surrogate to sue. This was a condition precedent to maintenance of the action. (Laws of 1837, chap. 460, § 65; *Perkins* v. *Stimmel*, 114 N. Y. 359, 367; *Graham* v. *Scripture*, 26 How. Pr. 501; *Reining* v. *City of Buffalo*, 102 N. Y. 308, 312.) If the defendant Ferris is liable at all, he is so liable only for one-third of the moneys not paid over by Low and interest thereon. (*Waggoner* v. *Walrath*, 24 Hun, 443; 92 N. Y. 639.) The death of the defendant, Rodney Sargent, discharged his estate, both at law and in equity. (*United States* v. *Price*, 9 How. [U. S.] 83; *Hauck* v. *Craighead*, 67 N. Y. 432; *Lane* v. *Salter*, 4 Robt. 239; *Candee* v. *Smith*, 93 N. Y. 349; *Morris* v. *Rexford*, 18 id. 552; *Wright* v. *Pierce*, 4 Hun, 351; *Riley* v. *A. S. Bank*, 36 id. 513; *Randall* v. *Sackett*, 77 N. Y. 480.) The sureties are in no event liable for the costs of prosecuting an action against their principal. (*Douglass* v. *Howland*, 24 Wend. 35, 59; *Clark* v. *Montgomery*, 23 Barb. 464.)

*Royal Corbin* for respondent. The sureties are bound by the judgment against the guardian. (Herman on Estoppel, 173; *Annett* v. *Terry*, 35 N. Y. 256; *Grivin* v. *Hickman*, 21 Hun, 316; *Rockfeller* v. *Donnelly*, 8 Cow. 637; *Harrison* v. *Clark*, 87 N. Y. 575.) The counsel for appellant in his brief at the trial, claimed that the final judgment against Low was irregular, having been docketed without previous notice to Low's attorneys. This is untenable. If there were any irregularity, the remedy is by motion or direct action to set the judgment aside. (*Wright* v. *Nostrand*, 94 N. Y. 32; *Smith* v. *Rathbun*, 88 id. 660.)

O'BRIEN, J. The general question presented by this appeal is the liability of the defendants to the plaintiff upon a bond given on the 29th of March, 1872, to the plaintiff, who was then a minor, to secure the faithful performance by Edwin B. Low, his general guardian, appointed on that day of the duties of his trust. The plaintiff arrived at the age of twenty-one years on the 26th of March, 1879, and it appears that on the fourteenth of the following May the guardian had in his hands $4,363.10 to which the plaintiff was entitled. On that day, as the findings show, the guardian and his brother, who was insolvent, approached the plaintiff with a view to a settlement and discharge of the obligation. They presented the brother's note for $3,200, payable to the order of the plaintiff and bearing date March 31, 1879, at two years, with semi-annual interest, and also a mortgage purporting to secure the payment of the sum for which the note was given and running to the plaintiff, covering two hundred acres of land in the state of Illinois. The guardian, for the purpose of inducing the plaintiff to settle his claim for the amount of the note, as secured, fraudulently represented to the plaintiff that the lands embraced in the mortgage were cultivated and valuable improved farm lands and worth at least $10,000, and ample security for the payment of the sum for which the note was given. The plaintiff was ignorant of the facts touching the solvency of the maker of the note and the value of the land

and the sufficiency of the security, but relied entirely upon
the representations of the guardian.   In fact the lands were
uncultivated swamp lands, not worth to exceed $700, all of
which was known to the guardian at the time of making the
representations.   The plaintiff believing the statements to be
true was induced to settle his claim for the note and security
and to give to the guardian a receipt in full for the $3,200, and
also a paper purporting to discharge him from his trust and
authorizing an attorney named to appear before the surrogate
and declare the account of the guardian settled and to procure
him to be formally discharged.   The attorney and the guardian
on the 12th day of January, 1880, appeared before the surro-
gate and the account was stated, and the guardian credited
with the payment of the balance in his hands, namely
$4,360.32, and, thereupon, the surrogate entered a decree
whereby it was adjudged that the guardian had fully
accounted for all moneys of his ward that came to his hands,
and that nothing remained in his hands that was due to the
plaintiff.

The plaintiff was ignorant of the facts constituting the
fraud thus practiced upon him until about the month of
November, 1880, when he immediately communicated his
information to the guardian, and demanded that the settle-
ment receipt, power of attorney, decree of the surrogate and
discharge be rescinded and treated as void, to which demand
the guardian assented and promised to pay the amount of
the claim to the plaintiff, but failed to do so except the sum
of $800, which was paid about the month of February, 1882.
It has also been found that the plaintiff, at all times since the
discovery of the fraud, has been ready and willing to restore
what he received from the guardian on the settlement, and
that before the commencement of any suit, he executed and
tendered to the guardian an assignment of the mortgage and
the note and a satisfaction thereof, and these papers have been
ready for delivery since October, 1882, when he commenced
an action in the Supreme Court against the guardian as such.
The object of that action was to procure a judgment annulling

the decree of the surrogate and the settlement papers upon which it was based, and declaring the account between the plaintiff and his said guardian to be unadjusted and the sum of $3,200 unaccounted for. The complaint contained suitable allegations of all the facts upon which to base the relief. The only pleading which the guardian served in the action was a demurrer which, upon a hearing, was overruled and judgment was ordered in favor of the plaintiff for the relief demanded with costs, which judgment was to be absolute unless the defendant answered over as he was·permitted to do by the judgment. It was entered on the 16th day of February, 1885, and adjudged, among other things, that there was still due to the plaintiff from the guardian the sum of $3,507.24, which included interest on the sum of $3,200 from March 31, 1879, less the payment made before mentioned. Service of a copy of the judgment was made upon the defendant's attorneys on the day of its entry. The defendant therein then appealed to the General Term where it was affirmed and judgment of affirmance and for costs entered June 9, 1885, which was made absolute in form upon proof that the defendant had failed to answer or pay costs as permitted by the Special Term. Executions were issued upon these judgments and returned wholly unsatisfied. Then the present action was commenced, October 31, 1885, against the sureties upon the guardian's bond, by the service of the summons and complaint, on that day, upon the sureties Gilletta Low, Rodney Sargent and Peter Ferris. The first named answered separately, by the same attorneys representing the guardian in the former suit, that she was a married woman when she executed the bond, and the action, as against her, was discontinued by stipulation, but she was not released. The other sureties answered by the learned counsel who argued the case at bar in this court, or by his firm, and after the case was at issue and ready for trial in 1886, they were substituted as attorneys in the old suit against the guardian and appealed to this court from that judgment.

The new attorneys then had control of both cases, and in

June, 1886, they made a motion to the court at Special Term
in both actions.   The object of these motions was first to per-
mit the appeal to the Court of Appeals in the old action to be
prosecuted without further security and to stay all proceedings
in this action, without security, pending that appeal.   This
motion was granted upon a showing in support of the applica-
tion, apparently that the plaintiff already had security in the
guardian's bond and that the appeal to this court from the
judgment in the old suit conclusively determined the liability of
the sureties on that bond.   In October, 1887, this court affirmed
the judgment (107 N. Y. 628) without an opinion.   In the
meantime and on the 28th of January, 1887, Sargent, defend-
ant, and one of the sureties died, leaving a will, in which the
defendant, Abbey A. Prouty, was named as sole executrix, to
whom letters testamentary were issued.   This action was
revived as against her by a supplemental complaint which was
answered by both defendants and these pleadings present the
issues in the case.   On the trial the plaintiff gave in evidence
the bond, the judgment-roll in the action against the guardian,
and the judgments of affirmance at General Term and in this
court, and the executions issued and returned unsatisfied and
rested.   Substantially the only proof given by the defendants
was to show that the sureties had no knowledge of the settle-
ment between the plaintiff and the guardian, or of any of the
fraudulent acts or proceedings before referred to, until the
month of October, 1885, and also some proof relating to the
financial responsibility of the guardian during a part of that
time.   The court found all the facts, the substance of which is
herein stated, and other facts not necessary to refer to, and found
according to the defendant's contention that they were ignorant
of the settlement or of the proceedings until the time stated,
and further, that up to April, 1882, the guardian was the
owner of a valuable piece of unincumbered real estate in the
county, the actual value of which was not shown, and which he
conveyed at that date, and has been insolvent since January
27, 1885.   He held as matter of law that the judgment in the
first action was *prima facie*, binding upon the defendants and

evidence against them of the facts therein adjudged, and that they were liable for the amount of that judgment and the costs with interest thereon.

The condition of the defendant's obligation was that the guardian "shall well and faithfully in all things discharge the duty of guardian to the above-named minor according to law, and render a just and true account of all moneys and property received by him, and of the application thereof and of such guardian in all respects to and before any court having cognizance thereof when thereunto required."

To insure the performance of this trust the sureties bound themselves in the penalty of the bond, "and each of us, our and each of our heirs, executors and administrators, and each and every of them, jointly and severally, firmly, by these presents." The principal questions discussed by the learned counsel for the defendant on this appeal are, first, that the sureties have been discharged by the settlement between the plaintiff and the guardian and the extension of time involved therein, and, secondly, in consequence of the plaintiff's omission to notify them at an earlier day of the situation or to proceed against the guardian. It was competent for the plaintiff, after he became of age, to settle with his guardian, and if the settlement had been fairly and honestly and not fraudulently made, it would discharge the guardian and his sureties. (*Kirby* v. *Taylor*, 6 Johns. Ch. 242.)

But in this case the settlement and the papers executed by the plaintiff to the guardian, as well as the decree of the surrogate based thereon, were vitiated by fraud and had no effect upon the plaintiff's rights. It is true that he was the only one that could complain of the fraud, or could elect to repudiate the transaction, and until such time as he did the transaction was binding. But when he made that election and brought an action to annul the transaction, and the court declared it void, the effect of the election and judgment was to make it void *ab initio*, and of no more effect or legal significance than if it had never occurred. So that, in truth, there was no settlement or release of the guardian, and no

binding or valid extension of time for the payment of the moneys in his hands by the plaintiff.

Upon principle and authority there cannot, I think, be any doubt that if the guardian had accounted before the surrogate in the usual way, and a decree had been entered, free from fraud, adjudging that he owed the plaintiff a designated sum, that decree would have bound the sureties. This is upon the principle that by their contract they are privy to the proceedings against their principal and when he is concluded they, in the absence of fraud or collusion, are concluded also. (*Douglass* v. *Howland*, 24 Wend. 35; *Jackson* v. *Griswold*, 4 Hill, 522; *Annett* v. *Terry*, 35 N. Y. 256; *Baggott* v. *Boulger*, 2 Duer, 160; *Rockfeller* v. *Donnelly*, 8 Cow. 637; *Girvin* v. *Hickman*, 21 Hun, 316; *Casoni* v. *Jerome*, 58 N. Y. 315; *Harrison* v. *Clark*, 87 id. 575; *Thayer* v. *Clark*, 48 Barb. 243; *S. C.* affd., 41 N. Y. 620; 4 Abb. Ct. App. Dec. 391; Herman on Estoppel, etc., 173, 174; *Dodge* v. *St. John*, 96 N. Y. 260; *M. Church* v. *Barker*, 18 id. 463.)

The plaintiff was obliged to bring an action to set aside the decree of the surrogate, which operated to discharge the guardian, and also to set aside the fraudulent transaction upon which this decree was based. He could not have obtained this relief in the Surrogate's Court, and the Supreme Court having obtained jurisdiction for this purpose could and did retain the whole case, not only for the purpose of setting aside the fraudulent settlement and decree, but also of determining the amount due to the plaintiff upon an honest accounting. (*Hood* v. *Hood*, 85 N. Y. 561; *Haight* v. *Brisbin*, 100 id. 219; *Perkins* v. *Stimmel*, 114 id. 359; *Stilwell* v. *Mills*, 19 Johns. 304; *Sanders* v. *Soutter*, 126 N. Y. 193.)

The duty of the guardian, guaranteed by his sureties, was to account before any court of competent jurisdiction for the money or property that came to his hands by virtue of the trust, and as the Supreme Court had such jurisdiction, its judgment against the guardian had, at least, the same force and effect as the degree of the surrogate would have had. The sureties by their contract had so connected themselves with the

obligations of the guardian, and with the proceedings to bring him to an account, and with the judgment rendered, that it bound them as well as the guardian, as to all questions necessarily involved. The judgment could be impeached for want of jurisdiction or for fraud or collusion, but in all other respects it became conclusive as evidence or by way of estoppel. The plaintiff could not have succeeded in his action against the guardian to annul the settlement and decree, without showing that he had rescinded, any more than he can now succeed against the sureties without establishing the same fact. But the judgment in the former action, adjudged that the transaction had been rescinded and this concludes the defendants also.

In regard to the question of *laches*, it is true that an omission to promptly repudiate and rescind a settlement of this character by the ward, and long acquiescence by him in what was done, with knowledge of all the facts, would furnish a good defense to the sureties. But so it would to the guardian, and the judgment against him has determined conclusively that there was no want of diligence in this respect on the part of the plaintiff in demanding rescission and tendering back what he had received. That question was necessarily an issue in the former action, and so far as it was, the defendants are concluded, though they may not be as to questions that did not concern the guardian's defense. But it is conceivable that sureties, under such circumstances, might have relied, to their prejudice, upon the decree of the surrogate, and an omission to attack that in time was a defense that may not have been involved in the former action, and was probably open to the defendants on the trial of this action, but the case is relieved from any difficulty on that point by the stipulation of counsel and the finding of the court that the defendants, up to the time of the commencement of this action, did not know of the existence of that decree, and, consequently, could not have acted upon the faith of it or have been misled or lulled into security by it.

It must be conceded that the judgment against the guardian

conclusively established at least the existence of the debt to the ward and when the plaintiff had proved the execution of the bond and that the remedies against the guardian had been exhausted by the return of an execution on the judgment unsatisfied he had made out his case.    It was not necessary to the maintenance of the action to establish any other fact determined by the former judgment.    It became necessary then for the defendant to show some defense and they gave no proof except with respect to the two facts already mentioned. In this view the judgment was more important to the defendants than to the plaintiff for unless the facts upon which they rely for a defense are thereby established, they are not established at all.    Without the judgment the court could not know that there ever had been a settlement induced by fraud, a discharge of the guardian or a decree of the surrogate adjudging, virtually, that the guardian had performed his trust, but all of which was based upon fraud.    Indeed, if the judgment is to be discarded as evidence for or against these defendants except so far as it proves the amount due to the ward, then it is perfectly clear that no defense whatever has been made out or even attempted.    In order to give the defendants any standing at all, they must have the benefit of all the facts determined in the suit against the guardian for they are not otherwise established. But the defendant cannot use that judgment as proof of facts in their favor and upon which they rely and at the same time reject the legal result of these facts as expressed in or necessarily implied from the decision.    They are really in the attitude here of insisting that the judgment is conclusive in this action as to the facts but not as to the law.    It was determined in that action that the plaintiff had rescinded and repudiated the transaction upon which the decree of the surrogate was based and that he had acted with reasonable promptness and diligence whether that was a fact or a legal conclusion, and the defendants must, if they claim the benefit of any part of the record, take the whole of it.

Moreover, it is apparent from the record and the course of the trial that the question of *laches* now urged in this court as a

ground for the reversal of the judgment constituted no part of the original plan of defense. It is predicated wholly upon a fact established only by the judgment-roll in the suit against the guardian given in evidence by the plaintiff, namely, that the plaintiff delayed the action against the guardian from the time of the discovery of the fraud in November, 1880, till October, 1882.

But no such defense was interposed or suggested by the answer. The only defenses set up are (1) the decree of the surrogate; (2) that the fraud was the personal act of the guardian, for which the sureties were not responsible; (3) that the plaintiff extended the time of the guardian to pay, for two years by taking the note without the consent of the sureties, who were released thereby; (4) that the plaintiff, after he became of age, settled with the guardian and released him; (5) that the plaintiff elected to treat the bond as joint by bringing an action against all the sureties. The answer contains no allegation that the plaintiff was chargeable with any *laches* in delaying to prosecute the guardian, and they cannot now avail themselves of a defense not pleaded, though the facts upon which it is based may appear in the record. It is not every fact that appears in the record that a party can have the benefit of in this court, but only such facts as have been pleaded and proven. *Secundum allegata et probata* is the rule that governs in such cases.

But apart from these considerations, and entirely independent of the question of the effect of the former judgment, it would be difficult to hold upon the facts upon which the defendant's argument is based, that the plaintiff is chargeable with such *laches* as operate to relieve the sureties. He did not discover the fraud until November, 1880, and then he immediately communicated the information to the guardian and demanded that the transaction be rescinded, and offered to restore what he had received under it, and the guardian promised to comply with this demand and to pay the claim, and in February, 1882, actually did pay a portion of it. The relation of guardian and ward is one of trust and confidence and, under

the circumstances, it cannot, we think, be affirmed as matter of law that the ward is chargeable with want of diligence because he acted upon the faith of the guardian's promise, and did not commence his action until October, 1882. After that date the delay is chargeable to the dilatory nature of the defenses interposed by the act of the defendants themselves and their principal. Nor can the plaintiff under the circumstances be charged with any omission of duty in not notifying the sureties. They could not remain passive during all this time, and then when called upon to respond impute *laches* to the plaintiff. They owed to him a more active duty than he did to them. They had virtually assured him by their contract that his guardian would be faithful to his trust and that he would not perpetrate a fraud upon him. Under such circumstances, if there was any duty to use active vigilance, it was imposed upon the sureties themselves rather than upon the ward. They had agreed to be responsible to him, not with reference to any fixed or computable period of time, but for all time until the guardian had accounted or paid and the relations completely terminated. In the case of guarantees for the collection of notes and such obligations, and other contracts of indemnity, the holder can know with certainty when the debt is due or when there is a breach of the contract secured. The rule of diligence that governs in such cases cannot be applied here at least with the same strictness. But even in that class of cases it is only when but one inference can be legitimately drawn from the facts that reasonable diligence becomes a question of law. If, on the contrary, different inferences may be fairly drawn by equally intelligent and unbiased minds, the question is one of fact. (*S. S. N. Bank* v. *Sloan*, 135 N. Y. 371; *C. N. Bank* v. *Pratt*, Id. 423.)

If the doctrine of *laches* could be applied to the relations that exist between the plaintiff and the defendant to the same extent as to that class of obligations just referred to, a proposition which may well be doubted, still the judgment could not be disturbed against the findings of the learned trial court.

The argument of the learned counsel for the defendant

seems to me to rest wholly upon the proposition that by mere delay to proceed against the guardian from November, 1880, to October, 1882, the sureties were relieved. I do not understand that delay alone on the part of the ward, after he becomes of age, to proceed against the guardian for accounting will discharge the sureties upon his bond. Of course, the ward, after he becomes of age, may so deal with him as to disable himself from proceeding, and then in a proper case the sureties could complain. But so long as the ward does not make a binding agreement for the extension of time, and does not preclude himself in any way from instituting the proper proceeding against the guardian, mere delay will not affect the obligation of the sureties on the bond, providing the right to proceed is not barred by the Statute of Limitations. If he institutes the proper proceeding within the time allowed by law, neither the guardian nor his sureties can defeat it by alleging that he has waited too long. In this case, had no fraud been perpetrated upon the ward, he could have waited and left the property in the hands of his guardian without relieving him or his sureties. The law did not require him to proceed within any particular period of time except that designated in the Statute of Limitations. Mere indulgence by the plaintiff of the guardian, without any valid agreement for delay or the extension of time, does not affect the obligation of the surety. (*Powers* v. *Silberstein*, 108 N. Y. 169; *Hurd* v. *Callahan*, 9 Abb. [N. C.] 374; *Daniels* v. *Patterson*, 3 N. Y. 47; *McKechnie* v. *Ward*, 58 id. 541; *H. M. Co.* v. *Harrington*, 82 id. 121; *Lowman* v. *Yates*, 37 id. 604; *Hunt* v. *Purdy*, 82 id. 486; *Steinbock* v. *Evans*, 122 id. 551.)

When the creditor refuses or neglects to proceed against the principal, after requested so to do by the sureties, this rule is modified, but that distinction has no application to this case, as no such request was ever made. Hence the only ground of complaint that defendants can urge upon this appea is the mere indulgence or delay to prosecute on the part of the plaintiff, and that is not a defense.

The facts of this case do not furnish any sufficient ground upon which the plaintiff can be deprived of the benefit of this

rule.  He was induced by fraud to settle with his guardian, and when he discovered the fraud he promptly repudiated the transaction, and called upon the guardian to account or pay. This the guardian promised to do, and while we may assume that such promise had some effect upon the plaintiff's mind, yet he did nothing whatever to tie his hands or bind himself to wait a single moment.  He could have proceeded at once against the guardian, but how did the delay in bringing the action affect the sureties any more than it would if no fraud had been committed ?   When the plaintiff rescinded the fraudulent settlement, he did no more than he had a right to, and no more than was his duty, but the fact that the fraud was committed and repudiated, imposed no greater duty of active vigilance upon the plaintiff than would have otherwise existed with respect to the sureties.  After the ward had repudiated the fraud by offering to restore what he had received, and demanding the money from the guardian, he was not limited by any different period of time for instituting proceedings to call him to account than he would have been if the fraud had not been practiced upon him.

The estate of a deceased surety upon a bond of this character, joint, in form, becomes discharged by the law as it existed when the obligation was given.  (*Getty* v. *Binsse,* 49 N. Y. 385; *Wood* v. *Fisk,* 63 id. 245; *Risley* v. *Brown,* 67 id. 160; *Hauck* v. *Craighead,* Id. 432; Code, § 756.)

But as this bond was several, as well as joint, we cannot see how the principle applies.  The parties could have been sued jointly or separately, and the action revived against the personal representatives of the deceased defendant.   (Code, § 454.)

One of the conditions of the bond was that the guardian would account.  The sureties could not be made liable until after decree or judgment against the guardian in the proper court, and that decree or judgment constitutes the measure of their liability.  If the court before which the accounting is had directs costs to be included in the judgment, then the costs are a part of the debt for which the sureties may be liable.  So that sureties upon a bond of this character may be

liable for costs included in a decree adjudging the amount due from the guardian, as their liability is generally coextensive with that of their principal. But in this case there never was any dispute between the plaintiff and the guardian with respect to the amount in his hands. After the plaintiff became of age, he assumed to settle with his guardian without any accounting, and to release him and to authorize the surrogate to enter a decree to that effect. The action in which costs were recovered was brought to get rid of these obstacles which stood in the way of proceedings upon the bond, and which had their origin in the plaintiff's consent, though induced by fraud. The costs of suits to set aside settlements and discharges made by the ward himself, when of full age and after he assumed the control and management of the estate, are not within the conditions of the bond, whatever the general rule may be as to costs upon an accounting. The plaintiff and his guardian agreed upon the amount due, and the fraud did not enter into the statement of the account, but consisted in inducing the plaintiff to accept in payment the worthless obligations of a third party. The costs of an action to restore the ward to the position he occupied before he entered into that agreement, are not, we think, chargeable to the sureties. The judgment should, therefore, be modified by striking out all costs included therein of the former suit against the guardian, and of the appeals from that judgment, and all sums included for interest and extra allowance thereon, and, as so modified, affirmed, without costs to either party in this court.

All concur, except ANDREWS, Ch. J., dissenting.

Judgment accordingly.