THE GERMAN AMERICAN COFFEE Co., Plaintiff, *v.* JOHN O'NEIL, Defendant.

(Supreme Court, New York Special Term, January, 1918.)

Accounting — equity — pleading — actions — release — corporations — executors and administrators — what operates as a discharge and satisfaction of claim against defendant as surviving joint tort feasor.

Where in an action, one of a series against various directors of the plaintiff, for an accounting in equity for misconduct while each of the several defendants had been such directors, it appeared that during the pendency of a similar action against a non-resident director he died, and, upon a holding of this court that his administrators could not be brought before it unless they were duly served with a supplemental complaint, plaintiff in that action compromised its claim against the administrators in consideration of a certain sum and executed a general release of all claims against the decedent's estate. *Held,* that the circumstances under which the release was executed clearly indicated that there was no intention to release the defendant in the present action and that a defense pleaded in his supplemental answer to the effect that the release given to the non-resident director's administrators operated as a discharge and satisfaction of plaintiff's claim against defendant herein as a surviving joint tort feasor was demurrable.

ACTION in equity for an accounting.

Rounds, Hatch, Dlliingham & Debevoise, for plaintiff.

Harper & Clements (George W. Harper, of counsel), for defendant.

GREENBAUM, J.   This action is one of a series of actions brought against various directors of the plaintiff corporation for an accounting in equity for misconduct covering the periods when each of them had been directors.   A similar action was brought against one William F. Johnston, a resident of Iowa, also a director, and during its pendency he died, and administrators of his estate were appointed by the Iowa court. It was held by this court that the foreign administrators could not be brought before it except by service upon them of a supplemental summons in this state. Under these circumstances the plaintiff compromised its claim against the administrators in consideration of the payment of $10,000 and executed a general release of all claims against the Johnston estate.   The defendant O'Neil in his supplementary answer interposed several defenses; the effect of which was that plaintiff's release to the Johnston estate operated as a discharge and satisfaction of plaintiff's claim against him as a surviving tort feasor.   The release in question made no mention of the plaintiff's claim against the surviving tort feasors.   In considering the effect of the release given by the plaintiff to the administrators of the Johnston estate it may be elucidating to review certain recognized rules at common law applicable to the question involved.   It is also important to keep clearly in mind the fact that we are here dealing with a case where the release was executed not to a living joint tort feasor, but to his legal representatives. The English modern doctrine seems to be that " as between joint debtors and joint tort feasors, a release given to one releases all." *Gilbert* v. *Finch,* 173 N. Y. 455, 463.   Where, however, the intention is clear that the release was not to discharge the liability of other joint debtors or joint tort feasors the release is construed as a covenant not to sue the party

released, thus preserving the right to enforce the original claim against the other joint debtor or joint tort feasor. *Walsh* v. *N. Y. C. & H. R. R. R. Co.,* 204 N. Y. 58, 63, 64. The English rule is practically the New York rule. Logically, the consequences flowing from a joint liability, whether arising under contract or tort, should be precisely the same since the joint character of the obligation is the foundation of the rule. At common law death destroyed a claim against a tort feasor, but one arising under contract survived. 1 Cyc. 49, 50. At common law if one of two or more joint obligors died his estate was discharged. *County of Erie* v. *Baltz,* 125 N. Y. 144, 148. It is not here disputed that the acts charged against the defendant arose *ex delicto* and that the deceased Johnston and the defendant must be regarded as joint tort feasors, jointly and severally liable to the plaintiff. *German-American Coffee Co.* v. *Diehl,* 86 Misc. Rep. 546, 551; affd., 168 App. Div. 913. How have the statutes of this state affected the liabilities of a tort feasor in case of his death? And what is the effect of these statutes as between joint tort feasors in the event of the death of one of them? Section 120 of the Decedent Estate Law (Laws of 1909, chap. 18), which is a re-enactment of the same provision found in part 3 of the original Revised Statutes enacted in 1828 (2 R. S. [1st ed.] chap. 8, tit. 3, p. 44), changed the common law as follows: " Section 120. For wrongs done to the property, rights or interests of another, for which an action might be maintained against the wrongdoer, such action may be brought by the person injured or after his death, by his executors or administrators against such wrongdoer, and after his death against his executors or administrators, in the same manner and with the like effect in all respects, as actions founded upon contracts. This section shall not extend to an

action for personal injuries, as such action is defined in section thirty-three hundred and forty-three of the code of civil procedure; except that nothing herein contained shall affect the right of action now existing to recover damages for injuries resulting in death." This section was construed in *Lane* v. *Fenn,* 76 Misc. Rep. 48, the court holding that an executor of a tort feasor was not entitled to an order of severance as matter of right in an action pending against the testator at the time of his death. The opinion in this case is contrary to the views expressed in *Union Bank* v. *Mott,* 27 N. Y. 633, and *Mulligan* v. *O'Brien,* 119 App. Div. 355. There is no question of severance of action involved in the instant case. It presents the question whether the administrators of the deceased Johnston, a joint tort feasor, are to be regarded as jointly liable with the surviving tort feasors, or whether the death of Johnston made them only severally liable. The conclusion in the *Fenn Case, supra,* was reached by construing section 758 of the Code of Civil Procedure as applicable, because of the provision in section 120 of the Decedent Estate Law that the action therein mentioned may be brought " in the same manner and with the like effect in all respects as actions founded on contracts." In *Seligman* v. *Friedlander,* 199 N. Y. 376, the court in its opinion said: " The legislature, of course, has power to change both rules of liability and rules of procedure. Courts, however, presume that a radical change in the common law by statute, especially when the change affects title to property or rules of liability, will be expressed with the clearness which the importance of the subject demands, or so that its meaning is unmistakable. In the effort to discover the exact intention of a statute claimed to effect such a change, the history of legislation upon the subject will be carefully examined and all the statutes

affecting it read together.  Construction will not be based on a single section, which, when read by itself, appears to overturn a well-established principle of the common law, but that section will be read in connection with all the commands of the legislature relating to the matter and the intention thus gathered from its command as a whole.''  Bearing in mind this rule of construction, let us examine the statutes upon which the court relied in *Lane* v. *Fenn, supra.*  Section 120 of the Decedent Estate Law as it reads only changes the common law by giving the right of action against the estate of the wrongdoer after his death.  It says nothing about the rights or liabilities of the legal representatives of a deceased joint tort feasor and the surviving joint tort feasors as between themselves.  There is no question but that section 120 makes the estate of a tort feasor liable for his acts.  But it does not therefore follow that the executor or administrator of the deceased is to be regarded as jointly liable with the surviving joint tort feasors.  The statute was not enacted for the benefit of a surviving wrongdoer, but exclusively for him who was the victim of a tortious act.  Because section 758 of the Code empowers the court, as mere matter of procedure, to sever an action where the liability is several as well as joint, is no reason for holding that the legislature thereby intended to declare that the legal representatives of a deceased wrongdoer are to be regarded as jointly liable with a surviving wrongdoer.  Besides, in *County of Erie* v. *Baltz,* 125 App. Div. 144, 149, the court apparently recognized that the question of severance was merely one of procedure and not intended to affect the rights of the estate of a deceased person, the court saying: '' If it be said a difficulty arises in joining the survivors and representatives of the deceased obligors, that the same judgment cannot be rendered against both, I reply

that the same difficulty would be presented where the representatives are brought in, by reason of a death occurring after the action is brought, and, moreover, there may be separate judgments in cases where the defendants are severally liable." Code Civ. Pro. §§ 455, 456. Incidentally it may be observed that at page 148 the opinion in the *Boltz* case intimates that *Union Bank* v. *Mott,* 27 N. Y. 633, is at variance with *Eaton* v. *Alger,* 47 id. 345, and *Douglass* v. *Ferris,* 138 id. 192. An examination of *Eaton* v. *Alger,* 47 N. Y. 345, discloses that the question under discussion was not even considered in that case. All the court said was that the question of improperly joining the representatives of W. S. Alger with the other defendants in the suit, not having been raised below, would not be considered by the court, even though it might be irregular. Referring to *Douglass* v. *Ferris,* 138 N. Y. 192, a perusal of the opinion in that case fails to reveal any discussion or consideration of the law as disclosed in *Union Bank* v. *Mott, supra.* There seems to be no adequate reason for extending the somewhat strictly artificial rules of the common law applicable to joint relationship to a case where, under the common law, a surviving wrongdoer could not, in an action brought by the injured person, be joined with the legal representatives of a deceased wrongdoer, unless the remedial statute clearly indicates that the legal representatives of the deceased must be deemed jointly liable with the surviving tort feasors. But aside from all that has been said, if the action maintainable under section 120 of the Decedent Estate Law may be brought " in the same manner and with the like effect in all respects as actions founded upon contracts," it should follow that section 1942 of the Code of Civil Procedure is applicable to the underlying question involved in this motion. That section provides that a joint debtor may

make a separate composition with his creditor, and that such composition or release " does not impair the creditor's right of action against any other joint debtor, or his right to take any proceeding against the latter; unless an intent to release or exonerate him appears affirmatively upon the face thereof." The rule recognized in *Gilbert* v. *Finch*, 173 N. Y. 455, that a release to one of a number of joint tort feasors releases the others unless there affirmatively appears on the face of such release an express reservation of the right to pursue the others, should therefore give way in the case of a release given to the legal representatives of a deceased wrongdoer to the rule applicable to cases arising under contracts. In other words, if the action brought against the representatives of a deceased wrongdoer shall have the " like effect in all respects " as actions founded upon contract, why should not the person injured have the right to settle with the legal representatives of the deceased wrongdoer, without impairing his right to continue his actions against the surviving wrongdoers to the extent of the balance of his claim, unless an intent to release the other tort feasors appears affirmatively upon the face of the release? The intent of the parties to the release is the controlling element. It seems to me that the circumstances under which the release was executed by the plaintiff to the legal representatives of the Johnston estate clearly indicates that there was no intention thereby to release the defendant. The foregoing views impel the court to sustain the demurrer, with costs.

Demurrer sustained.